ELLA KRIPPLABEN AND KARL KRIPPLABEN, RESPONDENTS, v. JOS. GREENSPON'S SONS IRON AND STEEL COMPANY, AND HARTFORD ACCIDENT AND INDEMNITY COMPANY, APPELLANTS.—50 S. W. (2d) 752.

St. Louis Court of Appeals. Opinion filed June 7, 1932.

*Jacob M. Lashly, Harold C. Ackert* and *Holland, Lashly & Donnell* for appellants.

*Joseph H. Brogan* and *Holland R. Polak* for respondents.

SUTTON, C.—This is an action for compensation under the Workmen's Compensation Act, for the death of Arthur Kripplaben, an employe of the defendant Jos. Greenspon's Sons Iron and Steel Company. Plaintiff Ella Kripplaben is the dependent widow of the employe, and Karl Kripplaben is his dependent son. Defendant Hartford Accident and Indemnity Company is the insurer of defendant Jos. Greenspon's Sons Iron and Steel Company against liability to its employes under the compensation act. The commission awarded compensation. Defendants appealed from this award to the circuit court. From the judgment of the circuit court, affirming the award of the commission, the defendants have appealed to this court.

The decedent, Arthur Kripplaben, was in the employ of defendant Jos. Greenspon's Sons Iron and Steel Company, on July 11, 1930, at its pipe yard in St. Louis, and had been in its employ for approximately five years prior to that date.

The commission found that "the employe's death was the result of heat exhaustion resulting from an unusual exposure to heat incidental to his employment."

There is no contention here that the evidence does not justify the finding that the decedent's death resulted from heat exhaustion. The sole contention is that there is no evidence to justify the finding that the heat exhaustion resulted from an unusual exposure to heat incidental to the employment. The applicable rule, which is invoked by the defendants, is that if an employe, because of his duties, is exposed to a special or peculiar danger from the elements, such as heat, cold, lightning or windstorm—a danger that is greater than that to which other persons in the community are subjected—an injury resulting from such exposure is compensable under the compensation act. If the character of the employment is such as to intensify the risk, the resulting injury is compensable. The causative danger must be peculiar to the work, and not common to the neighborhood. In other words, an injury resulting from the elements,

like any other injury, to be compensable, must arise out of the employment, as well as in the course of the employment. [Morris v. Dexter Mfg. Co., 225 Mo. App. 449, 40 S. W. (2d) 750; Sweeny v. Sweeny Tire Stores Co., 227 Mo. App. 93, ante; Cunningham v. Donovan, 93 Conn. 313, 1. c. 315; Ahern v. Moritz Spier, 93 Conn. 151, 1. c. 154; City of Joliet v. Industrial Commission, 291 Ill. 555, 1. c. 556; State v. District Courts, 138 Minn. 250; Kanscheit v. Garrett Laundry Co., 101 Neb. 702; Young v. Western Furniture & Mfg. Co., 101 Neb. 696, 1. c. 699; Murray v. Cummings Const. Co., 232 N. Y. 507; Walsh v. River Spinning Co., 41 R. I. 490, 1. c. 499; King v. Buckeye Cotton Oil Co., 155 Tenn. 491, 296 S. W. 3.

We think the facts here make out a compensable case under this rule. The decedent, at the time he was stricken, which was between twelve and one o'clock on Friday, July 11, 1930, was working at a threading machine, cutting threads on iron pipes, in a small shed or shanty. The pipes which were being threaded were twelve inches in diameter, and from eighteen to twenty feet long. The shed or shanty in which decedent worked was twelve feet long, eight feet wide, and seven feet six inches high. The frame of the shanty was of iron. It was sided with corrugated iron, and had a tin roof, which was only about eighteen inches above decedent's head as he worked. This shanty, composed entirely of metal, whose known property is to readily absorb and radiate heat, was exposed to the full blaze of the mid-summer sun. The threading machine, which was of metal, about filled the shanty, there being only room enough, or a little more, for a man to walk between the machine and the walls of the shanty. The pipes were black, and were hot from lying in the sun in the pipe yard for several days. They radiated heat as decedent worked upon and about them. The weight of the pipes was about 400 pounds each. Five or six of these hot pipes were placed on a table at a time, by means of a crane. They were then fed into the threading machine, from the table, through the side of the shanty. They were exposed to the sun while on the table. The decendent's work consisted of measuring these hot pipes with a tape, and marking them to show how they were to be threaded. He also superintended the work and saw that the work was properly done. In measuring and marking the pipes he came in contact with them. He stood over the pipes and close to the threading machine. He also, for an hour to an hour and a half, on the morning of the day he was stricken, in addition to his work of measuring and marking the pipes, assisted in handling the pipes in putting them into the threading machine. On Wednesday and Thursday, July 9th and 10th, he had worked in handling pipes in putting them into a thread-

ing machine in a large shed in the pipe yard. It appears that on Friday, July 11th, he was indisposed, and did not want to work, but upon the insistence of his foreman, he undertook the work in the small shanty as heretofore stated. Photographs of this small shanty, in which decedent worked, and its surroundings, were put in evidence. These photographs show various obstructions about and near to the shanty, such as piles of pipe and other iron, metal structures, rubbish, and other objects, calculated to shut out the ventilation, and radiate heat. The work was constant and exacting. One of the employes put it this way: "I get out there and do a day's work, and the boss knows how many threads we can make in a day. We can't be in a hurry about doing that work, but we got to move. We got to keep moving steady. There is no playing around there." The temperature on Friday, July 11th, ranged from ninety-one at nine o'clock A. M. to 102 at one o'clock. The percentage of sunshine during the day was ninety-eight, and the relative humidity was thirty-six. On Thursday, the temperature ranged from eighty-seven at seven o'clock A. M. to 103 at four o'clock. The percentage of sunshine was ninety-seven, and the relative humidity was forty. On Wednesday, the temperature ranged from eighty-one at seven o'clock A. M. to ninety-seven at five o'clock. The percentage of sunshine was 100, and the relative humidity was forty-one.

We regard the evidence as sufficient to justify the commission in finding that the decedent, because of his duties, was exposed to a special and peculiar danger from the heat, resulting in the heat exhaustion which caused his death.

The Commissioner recommends that the judgment of the circuit court be affirmed.

PER CURIAM:—The foregoing opinion of SUTTON, C., is adopted as the opinion of the court. The judgment of the circuit court is accordingly affirmed. *Haid, P. J.*, and *Becker* and *Nipper, JJ.*, concur.