BERTHA COLLETT *et al. v.* STATE COMPENSATION COMMISSIONER

(No. 8128)

Submitted April 10, 1935. Decided April 16, 1935.

Brown, Jackson & Knight, Herman Bennett and W. T. O'Farrell, for appellants.

Homer A. Holt, Attorney General, and Kenneth E. Hines, Assistant Attorney General, for respondent.

Steptoe & Johnson and James M. Guiher, for Weirton Steel Company.

WOODS, JUDGE:

This appeal is prosecuted from an order of the Compensation Commissioner denying Bertha Collett and Frances Martha Collett, widow and daughter, respectively, and dependents, of Ira Collett, deceased, compensation for death of the latter.

Ira Collett, thirty-two years of age, who, for years had been employed as "roller" in one of respondent's tin mills, dropped dead during his tour of duty, at 1:20 o'clock, P.M., Monday, June 21, 1926. On that day the men, instead of throwing out three singles, were working four, i.e., making a "turn". Collett, as "roller", was required, among other things, to lift forty pound packs of metal, in white heat condition, from the floor onto the roller, by use of short tongs. Although the highest temperature reading on the outside for the day, which was clear, was 81°, fellow employees testified, in effect, that the heat in the mill seemed hotter, affected them more, than usual. Collett, who was of athletic build, had never lost time on account of sickness. He was always in good spirits, and seemed to stand the mill heat well. He began

work at seven o'clock on the date of his death, apparently in good health. His fellow employees state that along about 10:30 to 11 o'clock they noticed that he appeared to be fatigued, that his eyes were sunken and his face flushed, and that he complained of being "all in". An autopsy was had shortly thereafter, the verdict being: "He died from broncho-pneumonia and dilation of heart." The physician, called by coroner, diagnosed the case: "Marked dilation of heart (over-filled with blood) and broncho-pneumonia of lower lungs, beginning of acute perecarditis." And the company physician signed a death certificate of like import.

The Commissioner, on August 27, 1926, and after consideration of the several affidavits and papers submitted by the inspector, wrote the widow stating, among other things, that "it has not been established that the death of the employee was the result of an injury received in course of and resulting from his employment. If you have any further evidence to submit in the claim the Commissioner will be glad to receive and consider it." It appears from the Commissioner's letter of March 21, 1927, to the inspector that Mrs. Collett had been in the former's office in reference to the claim. In this letter the inspector was directed to "see what evidence she (Mrs. Collett) has to produce." The inspector wrote Commissioner as of April 2, 1927, and October 4, 1927, stating in effect in the latter communication that the widow had directed that claim be dropped. The next thing appearing in the file is a letter, dated June 13, 1932, asking to submit further evidence in support of their claim. And in 1933, a formal petition was filed, accompanied by a number of affidavits secured in 1932. After a re-consideration of the file the Commissioner, on March 28, 1934, denied the claim. A statutory hearing was had the latter part of the year. At this hearing the evidence of the lay witnesses was practically the same as that previously submitted to the Commissioner. The two doctors, however, said that, in view of subsequent experience, and the history of the case, they were of opinion that Collett's death was a result of "heat exhaustion." The Commissioner, however, found that death was not a result of "injury received in the

course of and resulting from his employment within the contemplation of the statute."

Before dealing with the merits, we shall give consideration to the employer's cross-assignment of error—want of jurisdiction on the part of the Commissioner. It takes the position (1) that the limitation provided for in section 40, chapter 71, Acts 1929 (redrafted slightly for clarity in Code 1931, 23-4-16) to the effect that no further award may be made in fatal cases except within one year after the death of the employee, should apply to the instant case one year after its effective date; and (2) that the claimant was guilty of laches. As to the first, we have specifically held that the amendment is not retroactive in its operation and does not affect the continuing jurisdiction of the Commissioner in cases which had their origin prior to its enactment. *Carbon Fuel Company* v. *Commissioner*, 111 W. Va. 639, 163 S. E. 62; *Bonner* v. *Commissioner*, 110 W. Va. 38, 39, 156 S. E. 847. As to the second, it is apparent that the Commissioner did not intend the letter of August 27, 1926, to be an adjudication of the claim. And this is borne out by his subsequent act in placing the inspector back on the case. Admitting, but not deciding, that claimant could abandon a claim, there is no affirmative proof that she actually did do so. Respondent company was content to rely on its objection, without supporting proof. The claim, for all intents and purposes, was still pending. And laches does not run against a pending claim or action.

But was death the result of an injury received in the course of and resulting from the employment?

The rule is generally recognized, that if an employee, because of his duties, is exposed to a special or particular danger from the elements, such as heat, cold, lightning, or windstorm—a danger that is greater than that to which other persons in the community are subjected—an injury resulting from such exposure is compensable under the Compensation Acts. Schneider on Workmen's Compensation Law (2d), secs. 249, 333; and Annotations, 83 A. L. R. 1096, and 13 A. L. R. 974. The foregoing rule was applied by this Court in the case of *Rasmus* v. *Commissioner*, which was remanded by order of January 15, 1935, without opinion, in order that

the facts bearing upon the character of decedent's employment—whether or not it was such as to intensify the risk—might be further developed. In other words, injuries attributable to heat, etc., like any other injury, to be compensable, must not only be received in the course of, but must be the result of the employment.

There is no evidence negativing the fact that decedent came to death by heat exhaustion. The company's position that the Commissioner had passed on conflict of evidence is not well taken. As we read the evidence there is no conflict. While the anatomical findings of the two physicians at the autopsy were that of acute dilation of the heart and bronchial pneumonia, no history was considered. The explanation of the doctors, on the hearing, in view of the history is not in conflict, but merely explanatory. So, the Commissioner's finding was clearly without evidence to support it.

We are of opinion that the record clearly reveals that the decedent was exposed to a special and peculiar danger from the heat, resulting in the heat exhaustion which caused his death. We therefore reverse the Commissioner's finding and remand the case with directions that an order be entered granting claimants compensation in accordance with the provision of the statute governing same.

*Reversed; remanded with directions.*