BERTHA G. FIELDS v. TOMPKINS-JOHNSTON PLUMBING CO., ET AL.

(Filed 3 January, 1945.)

**1. Master and Servant § 40i—**

The rule generally recognized is that, where the employment subjects a workman to a special or particular hazard from the elements, such as excessive heat or cold, likely to produce sunstroke or freezing, death or disability resulting from such cause usually comes within the purview of the compensation acts. On the other hand, where the employee is not by reason of his work exposed to such hazards, the injuries are not ordinarily compensable. The test is whether the employment subjects the workman to a greater hazard or risk.

**2. Master and Servant § 52c—**

Where there is evidence in the record to support the facts found, the determination of the Industrial Commission is not subject to review.

**3. Master and Servant § 40f—**

In a proceeding under the Workmen's Compensation Act to determine the liability of defendant employer, for the death of an employee, where the evidence tended to show that deceased, a plumber, was working in a partially finished frame building calking with hot lead the joints of drain pipe in the ground, his face and head being in close proximity to the melted lead, which increased the temperature from one-half to ten degrees, the general outside temperature being at the time 104° Fahrenheit, and that deceased, after working all day to 4:30 p.m. became ill, reported his condition to his employer, got in his car, drove out of the enclosure where he was working and was found 25 minutes later, a few hundred yards down the road, unconscious and died a few hours later from exhaustion and sunstroke, there is sufficient evidence to support the finding of liability.

APPEAL by defendants from *Gwyn, J.,* at May Term, 1944, of SCOT-LAND.

Proceeding under Workmen's Compensation Act to determine liability of defendants to widow and adopted minor daughter, dependents of Charles Blane Fields, deceased employee.

In addition to the jurisdictional determinations, the operative findings and conclusions of the Industrial Commission follow:

On 19 July, 1942, Charles B. Fields was employed by Tompkins-Johnston Plumbing Company at the Maxton Air Base, installing plumb-

ing in a frame building, 50 by 30 feet, with weatherboarding up, and roof sheathed over, but with windows and doors not yet in, which building was eventually to be used as a bath house. The said Fields, with a helper, was installing the pipes in the ground, calking the joints with hot lead; "his face and head were in close proximity to the melted lead with which he was calking the drain pipes." There is evidence that this hot lead increased the temperature where Fields was working from ½ to 10 degrees, which the Commission finds subjected him to a temperature of "several degrees higher than the outside temperature owing to the hot lead being used in his work." The weather was unusually hot, the general outside temperature being 104 degrees Fahrenheit. Fields worked all day until about 4:00 p.m., when he became ill and reported to the office that he would have to "check in" for the day. He left the office, got in his automobile and drove out of the enclosure of the camp and a few hundred yards down the highway. Twenty-five minutes later he was found slumped over his steering wheel in an unconscious condition. He died in a few hours from heat exhaustion or sunstroke. It is found as a fact that the deceased was taken ill and the condition which produced his death "seized him before he left the premises of the defendant employer."

The Commission specifically finds that the deceased while performing his work and on the date he suffered the heat stroke and died from the effects thereof, "was subjected to a greater heat hazard than the public generally who performed manual labor was subjected to at the time and place plaintiff's deceased suffered his heat stroke or in the immediate vicinity thereof." And further that the intestate's death resulted from an injury by accident which arose out of and in the course of his employment.

Upon the facts found and conclusions reached, the Commission awarded compensation, and this was affirmed on appeal to the Superior Court. From this latter ruling, the defendants appeal, assigning errors.

*W. A. Leland McKeithen (in absentia) and M. G. Boyette for plaintiff, appellee.*

*Helms & Mulliss for defendants, appellants.*

STACY, C. J. The question for decision is whether the record permits the inference that the death of Fields resulted from an injury by accident which arose out of and in the course of his employment. An affirmative answer would uphold the judgment below; a negative response would reverse it.

The rule generally recognized is, that where the employment subjects a workman to a special or particular hazard from the elements, such as

excessive heat or cold, likely to produce sunstroke or freezing, death or disability resulting from such cause usually comes within the purview of the compensation acts. *Collett v. Com.,* 116 W. Va., 213, 179 S. E., 657; Anno. 83 A. L. R., 234; 71 C. J., 760. On the other hand, where the employee is not by reason of his work peculiarly exposed to injury by sunstroke or freezing, such injuries are not ordinarily compensable. *Walker v. Wilkins,* 212 N. C., 627, 194 S. E., 89; *Wax v. Des Moines Asphalt Paving Corp.,* 220 Iowa, 864, 263 N. W., 333; 28 R. C. L., 806. The test is whether the employment subjects the workman to a greater hazard or risk than that to which he otherwise would be exposed. *Lockey v. Cohen, Goldman Co.,* 213 N. C., 356, 196 S. E., 342; *Miskowiak v. Bethlehem Steel Co.,* 156 Md., 690, 145 Atl., 199; *Kripplaben v. Iron & Steel Co.,* 227 Mo. App., 161, 50 S. W. (2d), 752; 25 Cornell L. R., 645; Harvard L. R., 153. The decisions in *Neely v. Statesville,* 212 N. C., 365, 193 S. E., 664 (death from heart failure), and *Slade v. Hosiery Mills,* 209 N. C., 823, 184 S. E., 844 (death from pneumonia), are not at variance with this position, since these were cases free from "injury by accident." The general test was not there presented, as it is here. Hence, any expressions in the latter case on the general subject were *obiter.* See *Goodwin v. Bright,* 202 N. C., 481, 163 S. E., 576.

The question, then, on the present record is whether plaintiff's intestate's death may reasonably be attributed to the increased temperature occasioned by the manner and method employed in doing the work, or should it be ascribed to natural causes. Either inference seems permissible. Hence, the determination of the Industrial Commission that the additional hazard created by the artificial heat was the direct and super-inducing cause of plaintiff's intestate's death is conclusive on appeal. *Brown v. Aluminum Co., ante,* 766; *Hegler v. Cannon Mills, ante,* 669.

Where the record supports the fact-finding body, its determinations are not subject to review by the Superior Court or this Court. *Kearns v. Furniture Co.,* 222 N. C., 438, 23 S. E. (2d), 310.

The following from the opinion of the Commission makes clear its position in the matter: "It is the opinion of the Full Commission that a one degree increase in temperature by artificial heat at a time and place where the temperature is 104 degrees would be more likely to cause a heat stroke than an increase of 30 degrees from the natural temperature by artificial heat for instance in a boiler room when or at a place where the natural temperature is 60 degrees Fahrenheit." In other words, it is the last straw that breaks the camel's back.

While the evidence may be slight, it seems sufficient to sustain the award.

Affirmed.