CARLOS L. DILLINGHAM, EMPLOYEE-PLAINTIFF v. YEARGIN CONSTRUCTION COMPANY, EMPLOYER, AND AETNA CASUALTY AND SURETY CO., CARRIER, DEFENDANTS

No. 8610IC287

(Filed 16 September 1986)

**Master and Servant §§ 55.1, 67— workers' compensation—heart attack—no injury by accident**

Evidence was sufficient to support the finding of the Industrial Commission that plaintiff's heart attack was not an injury by accident arising out of and in the course of his employment where it tended to show that plaintiff was attending to his usual and customary duties as an instrumentation fitter at a nuclear power plant when he suffered a heart attack; plaintiff was not subjected to any unusual exertion or strain at the time; the temperature inside the room where he was working was cooler than the outside temperature; and plaintiff was not at an increased risk of developing heat exhaustion or cardiac arrest than the general public.

APPEAL by employee-plaintiff from the Opinion and Award of the North Carolina Industrial Commission entered 10 January 1986, which affirmed the Opinion and Award of Winston L. Page, Jr., Deputy Commissioner, entered 4 September 1985. Heard in the Court of Appeals 27 August 1986.

Dillingham v. Yeargin Construction Co.

This is a workers' compensation case in which the plaintiff was denied benefits for cardiac arrest suffered while on the job.

On 20 June 1984, the fifty-seven year old plaintiff had been employed for two months by the defendant, Yeargin Construction Company, as an instrumentation fitter at the Carolina Power and Light Company Brunswick Nuclear Electric Generating Plant. Some of plaintiff's duties required him to enter the reactor building while it was in operation. The attendant danger of radiation required him to wear protective clothing, which included a special protective suit, two pairs of plastic boots, rubber boots, heavy coveralls, cotton gloves, surgical gloves, and a hood covering his head. All seams and gaps around the neck, wrists, and ankles were sealed with duct tape. The plaintiff had worn the radiation suit approximately ten times during the two months he had been employed by the defendant and had worked in various hot areas of the plant, including the HPIC room and the drywell area. Each time the plaintiff would be perspiring heavily by the time he was completely dressed in the suit and prior to entering any work areas.

On the day of his injury, the plaintiff was assigned to work with Robert Harrelson in the HPIC room, a large area directly beneath the reactor. After dressing in radiation suits, the two men entered the work area. The outside temperature was estimated at 90 degrees and the temperature in the HPIC room was at least 86 degrees. Due to the cramped conditions in the room, only one person could work on the assigned valve.

Approximately thirty minutes after entering the room and working on the valve, the plaintiff stood up and struck his head on a pipe. He then began experiencing chills, dizziness, and weakness. Plaintiff told Harrelson that he needed to leave the room. After plaintiff removed his protective clothing, his foreman escorted him to the plant's first aid area. There, he passed out and was administered cardio-pulmonary resuscitation (CPR).

Plaintiff was transferred to Dosher Hospital in Southport and then to New Hanover Hospital in Wilmington, where he was treated for ventricular fibrillation. Dr. William F. Credle, Jr., who initially treated the plaintiff, diagnosed the plaintiff as having suffered a cardiac arrest precipitated by "exhaustive" heat conditions in plaintiff's work area. The diagnosis was based in part on

a history given largely by the plaintiff himself. That diagnosis was corroborated by Dr. William V. Grossman, whose tests revealed no underlying coronary heart disease. Dr. Grossman had treated the plaintiff on 16 July 1984, when the plaintiff suffered problems at home after his discharge from the hospital on 3 July 1984.

Deputy Commissioner Page, in his Opinion and Award, determined that the plaintiff had sustained an injury in the course of his employment, but that the injury did not occur as the result of an accident. The Deputy Commissioner found that the injury occurred during plaintiff's normal work routine, that he was not exposed to extreme heat, and that he was not at greater risk of developing heat exhaustion or cardiac arrest than the general public not so employed. Deputy Commissioner Page concluded, therefore, that the plaintiff had not suffered an injury by accident arising out of and in the course of his employment and denied plaintiff's claim for compensation. Plaintiff appealed to the full Commission, which affirmed the Deputy Commissioner.

*Murchison, Taylor, and Shell, by Michael Murchison and Vaiden P. Kendrick, for the plaintiff-appellant.*

*Marshall, Williams, Gorham, and Brawley, by Ronald H. Woodruff, for defendant-appellee.*

EAGLES, Judge.

The plaintiff assigns as error the finding of the Industrial Commission that his heart attack was not an injury by accident arising out of and in the course of his employment. Since it is undisputed that the heart attack arose out of and in the course of plaintiff's employment, our inquiry is limited to deciding whether the Commission erred in finding that it was not caused by an accident. In reviewing the Commission's findings, we are limited in that we may consider only (1) whether there is competent evidence to support the Commission's findings and (2) whether those findings justify the Commission's legal conclusions. *Barham v. Food World*, 300 N.C. 329, 266 S.E. 2d 676, *reh. denied*, 300 N.C. 562, 270 S.E. 2d 105 (1980).

In order for an injury to be compensable under G.S. 97.2(6), it must result from an accident to be compensable. The term "acci-

dent" has been variously defined, but, in essence, it requires that the injury be the result of some unusual or unexpected event or condition. *See Gabriel v. Newton*, 227 N.C. 314, 42 S.E. 2d 96 (1947). Where the injury is caused by a heart attack, the plaintiff must show that it was precipitated by some "unusual or extraordinary exertion." *Lewter v. Enterprises, Inc.*, 240 N.C. 399, 404, 82 S.E. 2d 410, 415 (1954).

In addition, it is well established that where the injury occurs while the plaintiff is carrying on his usual and customary duties in his usual way, the injury does not arise by accident. *Jackson v. North Carolina State Hwy. Comm'n*, 272 N.C. 697, 158 S.E. 2d 865 (1968); *Sanderson v. Northeast Const. Co.*, 77 N.C. App. 117, 334 S.E. 2d 392 (1985). This is true even where the exertion is the obvious cause of the injury. *See Slade v. Hosiery Mills*, 209 N.C. 823, 184 S.E. 844 (1936); *Neely v. Statesville*, 212 N.C. 365, 193 S.E. 664 (1937); *Jackson, supra.* In order for plaintiff appellant to prevail here, he must demonstrate that the evidence required the Commission to find that the heat and other conditions plaintiff was subject to were such that it could not be said that he was carrying on his usual work in his usual way when the heart attack occurred.

In its "Findings of Fact," the Commission found, in part, that:

7. . . . Plaintiff's injury did not however occur as the result of any interruption of his normal work routine. Plaintiff was not exposed to extreme heat nor did his injury result from extreme exertion. The temperature in the work area was cooler than the surrounding outside air and the area was ventilated with conditioned air.

8. Plaintiff was not at an increased risk of developing heat exhaustion or cardiac arrest as a result of his work in the HPIC area, than the general public not so employed.

Plaintiff argues that these findings are erroneous. Specifically, the plaintiff contends that the conditions to which he was exposed on 20 June 1984 were sufficiently unusual and unexpected to constitute an accident. Based on our examination of the record, we hold that there was competent evidence to support the Commission's findings of fact and that the Commission's findings support its legal conclusion that the plaintiff did not suffer an injury by accident.

The evidence shows that the plaintiff was attending to his usual and customary duties when his heart attack occurred. The plaintiff was an instrumentation fitter, hired to work at the Brunswick nuclear power plant. Accordingly, he was sometimes required to work in areas where there was a risk of exposure to radiation. By his own estimate, plaintiff had done this type of work approximately 10 times in the two months he had been employed at the plant. Each time, it was necessary for him to dress in the special protective clothing. Although plaintiff makes much of the fact that he spent about 75% of his working time outside of the plant, the amount of time spent pursuing a particular task does not answer the crucial question of whether a task was, nevertheless, part of his usual work. Here, all of the evidence indicates that working in the HPIC room was an integral part of plaintiff's usual work responsibilities.

There is also competent evidence to support the Commission's findings that the temperature was not unusually hot and that the plaintiff was not exposed to a greater risk from the heat than the general public. The plaintiff testified that the HPIC room was "at least" 20 degrees hotter than the outside temperature, which he estimated at over 90 degrees. He also testified, however, that he would rather get an answer on what the temperature was inside the HPIC room from someone else. In addition, the plaintiff had earlier testified that there was no way he could guess at the inside temperature and that "[i]t was just hot, that's all I can say." He also testified that the HPIC room was the hottest area of the plant.

Plaintiff also attempted to demonstrate that he was subject to an unusual amount of heat by testifying that he was sweating profusely inside the radiation suit. No evidence was presented, however, to show how much hotter it was inside the suit, to what degree this additional temperature could have increased his risk of cardiac arrest, or whether that temperature might be considered unusual. Moreover, the plaintiff testified that he sweated each time he had worn the suit and that the sweating had begun in the dressing area and before he had even begun working in the HPIC room.

The Commission also heard evidence on the temperature of the HPIC room from Robert Harrelson, who was the only other

person in the room at the time. Mr. Harrelson testified that the HPIC room was hot but not abnormally hot. He also testified that the HPIC room was no warmer than other parts of the plant and that it had an air conditioning vent. When asked to compare the outside temperature with the inside temperature he said that they were "maybe the same" but that he did not know. The only other evidence of the temperature in the HPIC room came from Dr. Credle. Dr. Credle stated in his deposition that part of the history he received concerning the plaintiff's injury was a statement by the plant's safety officer that the temperature in the HPIC room was "in excess of 86 degrees."

The evidence of the temperature of the outside air, the HPIC room, and inside the radiation suit is scant and inconclusive. Because findings of the Commission are conclusive on appeal if supported by competent evidence, even when the evidence supports a contrary finding, *Morrison v. Burlington Industries*, 304 N.C. 1, 282 S.E. 2d 458 (1981), we may not reverse the Commission's findings that the temperature in the HPIC room was cooler than the outside temperature, that the plaintiff was not exposed to extreme heat, and that the plaintiff was not at a greater risk of cardiac arrest than the general public.

We note that the Commission's findings of fact contain a finding that the plaintiff did not suffer from "extreme" heat or "extreme" exertion. Since, however, a plaintiff needs to show that the exertion or strain was only unusual, not extreme, this finding would, by itself, be insufficient for us to determine the rights of the parties. Consequently, we would have to remand this case for further findings of fact. *Perry v. Hibriten Furniture Co.*, 296 N.C. 88, 249 S.E. 2d 397 (1978).

Taking its findings as a whole, however, it is apparent that the Commission found that the plaintiff suffered no unusual, as well as no extreme, exertion or strain. The Commission's findings that the injury did not occur as the result of any interruption of plaintiff's work routine, that the temperature outside was hotter than it was inside, and that the plaintiff was not at an increased risk of developing heat exhaustion or cardiac arrest than the general public, all clearly indicate that it found that the exertion and strain which the plaintiff was working under on 20 June 1984 was not unusual.

The plaintiff relies on *Fields v. Plumbing Co.*, 224 N.C. 841, 32 S.E. 2d 623 (1945) in support of his argument that his heart attack was an injury by accident. In *Fields*, the court affirmed the Commission's award to a plumber who died from heat exhaustion. The plumber was working in an unfinished building, caulking pipes with hot lead. The temperature that day reached 104 degrees and he had been working all day, often with his head close to the hot lead. In affirming the award, the court said that the test for recovery was "whether the employment subjects the workman to a greater hazard or risk than that to which he otherwise would be exposed." *Id.* at 843, 32 S.E. 2d at 624. Plaintiff contends that the test enunciated in *Fields*, and the facts in this case, require us to reverse the Commission's denial of his award. We disagree.

The *Fields* decision is readily distinguishable. There, the temperature was 104 degrees and the plumber had worked all day. In addition, the evidence showed that the natural heat of the day was increased by the hot molten lead with which the plumber was working. No similar conditions existed in the instant case. The outside temperature was estimated at 90 degrees and the Commission found that the temperature in the HPIC room was even lower. The evidence shows that wearing the radiation suit would make one hot. But, other than the plaintiff's testimony that he was sweating just after putting it on, there is no evidence which shows how much hotter it made the temperature. In addition, the plaintiff had worked only about 30 minutes when he suffered his heart attack.

Most importantly, *Fields* does not mandate a reversal of the Commission because of the nature of the court's holding there. In *Fields*, the Commission had found that the additional hazard created by the heat from the lead directly caused the plaintiff's death. The court merely held that there was sufficient evidence to support that finding, noting that the evidence was slight and permitted a contrary conclusion. What the court did in *Fields* is, therefore, no different than what we must do here: affirm findings of the Commission because they are supported by competent evidence.

The facts in the cases of *Slade v. Hosiery Mills*, *supra*, and *Neely v. Statesville*, *supra*, are more analogous than the *Fields*

decision. In *Slade*, the employee's job required him to wash heavy machinery and to remove ashes from the furnaces. The employee was working in a hot room on an unusually hot day in June. He got wet and, when he went outside into the open air, the sudden change in temperature caused him to contract pneumonia, from which he later died. Because there was no evidence that the conditions were unusual, the court reversed the Commission's award. The employee, the court said, "was pursuing the general routine of his employment. Nothing unusual or unexpected took place at the mill. The weather was hot, but not excessively so." *Id.* at 826, 184 S.E. at 845.

In *Neely*, the court reversed an award given to a fireman who suffered a heart attack while fighting a fire. The fireman had to pull 700 feet of heavy firehose from a fire truck, rush up two flights of stairs and up into the attic of a burning house. The court held that, even though the heat and smoke were almost unbearable, the fireman was carrying on his usual work and the surrounding conditions which precipitated the attack were to be expected. Therefore, his injury was not one by accident.

We believe that *Slade* and *Neely* are controlling and require us to affirm the Commission's denial of the plaintiff's claim. Competent evidence shows that working in the HPIC room under unpleasantly hot and cramped conditions was part of the plaintiff's usual employment duties. Competent evidence also shows that the manner and method by which he performed his duties that day were not unusual or extraordinary. Therefore, the Commission could have properly reached the legal conclusion that the plaintiff did not suffer an injury by accident arising out of and in the course of his employment.

The denial of plaintiff's claim by the Industrial Commission is therefore affirmed.

Affirmed.

Judges ARNOLD and PARKER concur.