* * * * * * * * * * *
The Full Commission reviewed the prior Opinion and Award based upon the record before Deputy Commissioner Donovan and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except for minor modifications. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Donovan with modifications. *Page 2 
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. The parties are subject to the N.C. Workers' Compensation Act.
2. An employee-employer relationship existed between the named employee and named employer.
3. The carrier liable on the risk is correctly named above.
4. The decedent worked less than one day and was paid $10.00 an hour on that date.
5. The issues for determination are:
 a. Whether the decedent's death was caused by an accident while in the scope of his employment on or about July 31, 2003; and
 b. To what, if any, benefits are the decedent or his dependants entitled.
 * * * * * * * * * * * EXHIBITS
1. The parties stipulated the following documentary evidence:
 a. Stipulated Exhibit #1: Pre-trial Agreement;
 b. Stipulated Exhibit #2: The decedent's medical records;
 c. Stipulated Exhibit #3: Industrial Commission Forms;
 d. Stipulated Exhibit #4: The decedent's Death Certificate;
 e. Stipulated Exhibit #5: Birth Certificate for Sierra Coons; and
 f. Stipulated Exhibit #6: Defendants' discovery responses. *Page 3 
2. In addition to the Stipulated Exhibits, the following Exhibit was admitted into evidence by the Deputy Commissioner:
 a. Plaintiff's Deposition Exhibit #1: Weather information for date of injury.
 * * * * * * * * * * *
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of his death on July 31, 2003, the decedent was 28 years old. The decedent was not married but had one minor child, Sierra Christine Coons.
2. The decedent began employment with defendant-employer at 9:00 a.m. on July 31, 2003, at a wage of $10.00 per hour. The decedent was assigned to nail rafters for the roof and was working while standing on an eight-foot ladder. The decedent's co-workers stated that he was working when he began to drop things and began to speak in a loud voice. The decedent fell from the ladder. When his co-workers got to him, he had labored breathing and his lips were turning blue.
3. The decedent's supervisor, George Corey, called for emergency assistance. EMS arrived and attempted cardiopulmonary resuscitation. EMS workers noted that the decedent was hot to the touch.
4. The decedent was transported to Carteret General Hospital and was pronounced dead on arrival by Dr. Andrea Dupont, an emergency room physician. Dr. Matthew Sullivan, who was the medical examiner at Carteret General Hospital on that day, ordered that an autopsy be performed due to the circumstances of the decedent's death. *Page 4 
5. An autopsy was performed on decedent by Dr. Charles Garrett on August 3, 2003. Dr. Garrett testified, and the Full Commission finds as fact, that it was his opinion to a reasonable degree of medical certainty that the decedent died as a result of a heat stroke. Dr. Garrett based his opinion on the fact that it was the decedent's first day working construction, the decedent had been working outside on a summer day, the decedent's body was hot to the touch at the scene, and the autopsy eliminated any other cause for the decedent's death. Additionally, Dr. Garrett testified that, as in the present case, the symptoms of heat stroke "may come on very suddenly with sudden collapse."
6. There was evidence that the decedent had gone through a period of binge drinking, including taking drugs sometime prior to the date of his death; however, the autopsy showed no evidence of alcohol or drugs in his system at the time of his death. Dr. Garrett testified at deposition that while the decedent may have experienced some alcohol withdrawal that made him "a little more susceptible to heat stroke," it was his opinion that the decedent would have died from the heat stroke regardless of the alcohol withdrawal. Dr. Garrett opined that the decedent lost the ability to cool his body based on the "heat load," which caused his heart to stop.
7. Dr. Sullivan, the medical examiner at Carteret General Hospital who ordered the decedent's autopsy, testified regarding Dr. Garrett's autopsy report, and concurred in Dr. Garrett's finding that the decedent died as a result of heat stroke. Dr. Sullivan testified, and the Full Commission finds as fact, that the temperature and humidity in which the decedent worked on July 31, 2003, were "compatible with someone having heat stroke." Dr. Sullivan further testified that a diagnosis of heat stroke was proper in the present case, given that the decedent *Page 5 
was a "young able-bodied otherwise healthy person . . . with the absence of other findings, for example, head trauma or cardiac problems."
8. The weather records offered into evidence by plaintiff indicate that at the time of the decedent's death, the temperature was in the mid 80s and the humidity was approximately 82%.
9. The Full Commission finds there to be insufficient evidence that the decedent was performing his job duties in any other than a routine manner at the time of his collapse. Based upon the totality of the evidence of record, including the testimony of Dr. Garrett and Dr. Sullivan, the Full Commission finds that the decedent was at a greater risk of heat stroke than those members of the general public not so employed given that (1) there existed high temperature and humidity, (2) the decedent was performing manual labor outside in the elements, and (3) it was decedent's first day working and, thus, he was not accustomed to the exertions required by the job.
10. Based upon the fact that the sole evidence presented regarding the decedent's earnings is that he earned $10.00 per hour, the Full Commission finds that the decedent's average weekly wage was $400.00, yielding a compensation rate of $266.68 per week.
11. There is insufficient evidence upon which to find that Sierra Christine Coons, decedent's minor child who was born out of wedlock to decedent, was acknowledged in sufficient fashion by the decedent and was dependent upon the decedent at the time of his death. In addition, the Full Commission finds that the child's purported guardian ad litem, Mary P. Davis, was not properly appointed pursuant to the Rules of the Commission. Thus, the Full Commission finds it to be proper to remand this matter to a Deputy Commissioner for the proper *Page 6 
appointment of a guardian ad litem for Sierra Christine Coons, and the taking of evidence regarding the minor child's acknowledgment by the decedent and her dependency upon him.
12. The decedent' mother, Mary P. Davis, paid the decedent's funeral expenses.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. In order for a claimant to be entitled to compensation under the Act for an injury sustained arising out of and in the course of their employment, it must be shown that the injury was the result of an accident as defined under the Act. Davis v. Raleigh Rental Center,58 N.C. App. 113, 292 S.E.2d 763 (1982). The mere fact that an injury has occurred does not itself establish the fact of an accident. Reams v.Burlington., 42 N.C. App. 54, 255 S.E.2d 586 (1979).
2. An accident is defined under the Act as an unlooked for and untoward event and a result produced by a fortuitous cause. Davis v.Raleigh Rental Center, 58 N.C. App. 113, 292 S.E.2d 763 (1982). The resulting injury must involve more than the carrying on of the usual and customary duties in the usual manner to justify an award of compensation. Id. It has also been held that injuries caused by a heart attack must be precipitated by unusual or extraordinary exertion in order to be compensable. Lewter v. Enterprises, Inc., 240 N.C. 399,82 S.E.2d 410 (1954).
3. An exception to the above-stated rules has been addressed byFields v. Plumbing Co., 224 N.C. 841, 32 S.E.2d 623 (1945).Fields provides the rule to be applied when the injury is sustained through occupational exposure to heat or cold:
 [W]here the employment subjects a workman to a special or particular hazard from the elements, such as excessive heat or cold, *Page 7 
likely to produce sunstroke or freezing, death or disability resulting from such cause usually comes within the purview of the compensation acts. . . . The test is whether the employment subjects the workman to a greater hazard or risk than that to which he otherwise would be exposed.
Id. at 842-43, 32 S.E.2d at 624
4. In Dillingham v. Yeargin Constr. Co., 320 N.C. 499, 358 S.E.2d 380
(1987), the Supreme Court noted "A thermometer reading alone is not dispositive in cases of heat-related illness. It is the province of the medical experts, not the appellate courts, to determine whether a room temperature of 85 degrees may be a factor in causing heat exhaustion when all circumstances, including the type of clothing worn, are considered." In the present case, Dr. Garrett testified to a reasonable degree of medical certainty that the decedent died as a result of a heat stroke in considering that it was the decedent's first day working construction, that his body was hot to the touch at the scene, and that the autopsy eliminated any other cause for the decedent's death. Thus, the Full Commission concludes as a matter of law that the medical evidence in this matter, including the testimony of Dr. Garrett and Dr. Sullivan, is sufficient to show that the decedent died as a result of heat stroke while in the course of his employment. Id.
5. In this case, there is no evidence that the decedent was performing his job duties in any other than a routine manner at the time of his collapse. Based upon the totality of the evidence of record, the Full Commission concludes as a matter of law that the decedent was at a greater risk of heat stroke than those members of the general public not so employed given that (1) there existed high temperature and humidity, (2) the decedent was performing manual labor outside in the elements, and (3) it was decedent's first day working and, thus, he was not accustomed to the exertions required by the job. Accordingly, the decedent sustained an injury by accident on July 31, 2003, arising out of an in the course of his employment with defendant-employer *Page 8 
resulting in his death by heat stroke on July 31, 2003. N.C. Gen. Stat. § 97-2(6); Dillingham v. Yeargin Constr. Co., 320 N.C. 499,358 S.E.2d 380 (1987).
6. In the alternative, if the Full Commission had found there to be insufficient evidence to show that the decedent died of heat stroke while in the course of his employment, the Full Commission concludes that this claim would be compensable under Pickrell v. Motor Convoy,Inc., 322 N.C. 363, 368 S.E.2d 582 (1988). Where the circumstances concerning the causal connection between the decedent's work and his death are unknown, there is a "presumption that death was work-related, and therefore compensable, whether the medical reason for death is known or unknown," known as the "Pickrell presumption." Wooten v. NewconTransp. Inc., 632 S.E.2d 525, ___ N.C. App. ___ (2006). The North Carolina Supreme Court stated in Pickrell:
 Applying such a presumption of compensability is fair because the Workers' Compensation Act should be liberally construed in order to accomplish its purpose. Employers may be in a better position than the family of the decedent to offer evidence on the circumstances of the death. Their employees ordinarily are the last to see the decedent alive, and the first to discover the body. They know the decedent's duties and work assignments.
Pickrell, 322 N.C. at 370, 368 S.E.2d at 586. In the present case, absent a finding that the decedent died of heat stroke, the medical evidence of record could only lead to the conclusion that the causal connection between the decedent's work and his death are unknown and that the medical reason for death is unknown. Id. Thus, the decedent would be entitled to a "presumption of compensability where the evidence shows that death occurred while the decedent was within the course and scope of employment, but the medical reason for death is not adduced."Id. The Pickrell Court held that "in those cases where the claimant is entitled to rely on the presumption, the defendant must come forward with some evidence that death occurred as *Page 9 
a result of a non-compensable cause; otherwise, the claimant prevails."Pickrell, 322 N.C. at 371, 368 S.E.2d at 586. In the present case, the Full Commission concludes that the defendants have not provided sufficient evidence that the death occurred as a result of a non-compensable cause. Id. Thus, if the Full Commission had found there to be insufficient evidence to show that the decedent died of heat stroke while in the course of his employment, the Full Commission concludes that this claim would be compensable under Pickrell.
7. There is insufficient evidence upon which to conclude that Sierra Christine Coons, decedent's minor child who was born out of wedlock to decedent, was acknowledged in sufficient fashion by the decedent and was dependent upon the decedent at the time of his death. N.C. Gen. Stat. § 97-39; Tucker v. City of Clinton, 120 N.C. App. 776, 463 S.E.2d 806
(1995). In addition, the Full Commission finds that the child's purported guardian ad litem, Mary P. Davis, was not properly appointed pursuant to Industrial Commission Rule 604. Thus, the Full Commission concludes it to be proper to remand this matter to a Deputy Commissioner for the proper appointment of a guardian ad litem for Sierra Christine Coons, and the taking of evidence regarding the minor child's acknowledgment by the decedent and her dependency upon decedent's earnings at the time of his death. N.C. Gen. Stat. § 97-39; Industrial Commission Rule 604.
8. The decedent's average weekly wage must be calculated to provide a fair and just result to all parties. N.C. Gen. Stat. § 97-2(5). Because the decedent was on his first day of work at the time of his death, his average weekly wage cannot be calculated by use of the first or second methods provided in N.C. Gen. Stat. § 97-2(5). No evidence has been presented of the average weekly wage of an employee of the same grade and character as the decedent and in the same locality or community earned in the 52 weeks preceding the decedent's injury by accident; *Page 10 
therefore, it is impossible to calculate the decedent's average weekly wage according to the fourth method provided in N.C. Gen. Stat. §97-2(5). Therefore, the Full Commission concludes that fair and just results can only be obtained by calculating the average weekly wage based on the hourly wage being paid to the decedent and multiplying that amount by a 40 hour week. Thus, the Full Commission concludes as a matter of law that the decedent's average weekly wage was $400.00, which yields a compensation rate of $266.68 per week. N.C. Gen. Stat. §97-2(5).
9. If the evidence to be adduced upon remand of this matter to a Deputy Commissioner shows that the minor child Sierra Christine Coons was sufficiently acknowledged by the decedent as his child, and was dependant upon the decedent's wages at the time of his death, then Sierra Christine Coons shall be entitled to compensation at the rate of $266.68 per week for 400 weeks from the date of decedent's death or until she reaches her eighteenth birthday, whichever occurs last. N.C. Gen. Stat. § 97-38.
10. The decedent is entitled to have defendants pay for medical expenses incurred as a result of his compensable death. N.C. Gen. Stat. § 97-25.
11. The defendants are responsible for payment of burial expenses not to exceed $3,500 to the person or persons thereto entitled. N.C. Gen. Stat. § 97-38.
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay for medical expenses incurred as a result of the compensable death. *Page 11 
2. Defendants shall reimburse burial expenses not to exceed $3,500 to the person or persons thereto entitled.
3. This matter is hereby remanded to Chief Deputy Commissioner Stephen T. Gheen for assignment to a Deputy Commissioner for the taking of evidence and additional hearing, if necessary, and the entry of an Opinion and Award consistent with the conclusions derived herein on the issues of whether the minor child Sierra Christine Coons was sufficiently acknowledged by the decedent as his child, and was sufficiently dependant upon the decedent's wages at the time of his death in order to be entitled to receive benefits pursuant to N.C. Gen. Stat. § 97-38. As to these issues, the Deputy Commissioner is specifically directed to take the testimony of the mother of Sierra Christine Coons, and the testimony of Mary P. Davis, the mother of the decedent. In addition, the Deputy Commissioner is directed to appoint a guardian ad litem for Sierra Christine Coons pursuant to Industrial Commission Rule 604.
4. Defendants shall pay the costs, including the expert witness fees in this matter, if not paid by prior order.
This 16th day of April 2007.
S/____________________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/____________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/____________________ DANNY LEE McDONALD COMMISSIONER *Page 1