***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Stephenson and the briefs and oral arguments of the parties. With reference to the errors assigned by plaintiff, the Full Commission finds that plaintiff has shown good grounds to reconsider the evidence. Accordingly, the Full Commission REVERSES the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award.
 *********** ISSUES TO BE DETERMINED
Whether plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer on August 9, 2007 and if so, to what medical and indemnity compensation, if any, is he entitled. *Page 2 
 ***********
The Full Commission finds as facts and concludes as a matter of law the following which were entered into by the parties at the hearing and in a Pre-Trial Agreement, which is admitted into the record and marked as Stipulated Exhibit (1) as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction over this matter.
2. On August 9, 2007 the parties were subject to and bound by the North Carolina Workers' Compensation Act.
3. On August 9, 2007 an employee-employer relationship existed between plaintiff and defendant-employer.
4. On all relevant dates, defendant-employer was self-insured.
5. Plaintiff alleges to have sustained a compensable injury on August 9, 2007.
6. At the time of the alleged injury, plaintiff's average weekly wage was $562.80, yielding a compensation rate of $375.20.
7. Plaintiff has not worked since August 9, 2007, except for a short period in October 2007.
8. The parties stipulated to the following exhibits:
 a. A Packet of Industrial Commission Forms, which is admitted into the record and marked as Stipulated Exhibit (2);
 b. A Packet of Medical Records, which is admitted into the record and marked as Stipulated Exhibit (3); *Page 3 
 c. A Packet of Discovery Responses, which is admitted into the record and marked as Stipulated Exhibit (4) and;
 d. A Packet of Temperature Records for Mt. Airy for August 9, 2007, which is admitted into the record and marked as Stipulated Exhibit (5).
9. Also made part of the record are the depositions of Dr. Kevin Brown, Dr. Gwendolyn Wigand Bolling and Dr. Brandon Chandos.
 ***********
Based upon a review of all the credible evidence in the record, the Full Commission makes the following:
 FINDINGS OF FACT
1. As of the date of the hearing before the Deputy Commissioner, plaintiff was forty-eight (48) years of age, with his date of birth being May 6, 1959. Plaintiff has a sixth (6th) grade education.
2. Plaintiff was employed by defendant-employer as a heavy equipment operator at its landfill. As of the date giving rise to this claim, plaintiff had been employed in that capacity for more than eight (8) years. The equipment plaintiff operated included a 973 track loader which he used to pack and cover household garbage, and for making roads for trucks to use when dumping garbage. Defendant-employer's landfill is operational five and one-half (5½) days per week and only closes for severe ice and snow.
3. Plaintiff described the landfill in which he worked as being shaped like a bowl and about the size of a football field. According to plaintiff, he worked at "the bottom of the bowl" where there is no type of fan system to circulate air. *Page 4 
4. During the course of his workday plaintiff had to get out of the cab of the track loader to remove debris such as metals, rolls of plastic, and barbed-wire that would become hung up in the tracks of his vehicle. He would have to get out of the cab anywhere from thirty to forty (30 to 40) times a day during the course of a workday to free any item that would get caught in the tracks. Once outside of the cab, the length of time he would have to be outside would vary.
5. As a child, plaintiff had been told that he may have had a febrile seizure, but that had never been confirmed. However, prior to August 9, 2007, plaintiff had never been prescribed any anti-epileptic medication and he had no assigned physical restrictions as of that date.
6. On August 9, 2007, plaintiff suffered a heat-related incident and a seizure at work that he contends were caused by the weather conditions on that date. The evidence of record establishes that on that date, the air temperature exceeded ninety-eight (98) degrees with the humidity being in excess of sixty (60) percent. Although the cab of his loader was air conditioned, plaintiff had been working outside of the cab for approximately thirty (30) minutes immediately preceding the time he experienced his seizure. Specifically, plaintiff had been working outside the cab along with a co-worker to free a piece of metal that was caught in the track of his loader with its engine running. In the performance of this task, plaintiff pulled on and hit the metal with a shovel. The piece of metal eventually came loose. Plaintiff then dragged the ten to fifteen (10 to 15) pound piece of metal forty to fifty (40 to 50) feet to the edge of the landfill. Upon returning to and entering his loader, plaintiff did not feel well and told this to a co-worker, Mr. Roger O'Neal. He continued to work but does not remember what happened thereafter. *Page 5 
7. Mr. O'Neal observed plaintiff step out of the loader and fall to the ground. After plaintiff fell, Mr. O'Neal radioed for help and sponged plaintiff with liquid from his cooler. According to Mr. O'Neal, plaintiff appeared to be drifting in and out of consciousness.
9. After receiving the call from Mr. O'Neal, Mr. Dennis Bledsoe, also an employee of defendant-employer, contacted emergency personnel. When the emergency personnel arrived, Mr. Bledsoe led them to plaintiff's location. Mr. Bledsoe assisted plaintiff in getting to his feet and getting into the emergency vehicle.
10. Plaintiff was then transported by the emergency personnel to Northern Surry County Hospital. Records of the first responders reflect that plaintiff had sustained a heat-related illness. Records from the hospital reflect that plaintiff had sustained a heat stroke.
11. From Northern Surry County Hospital, plaintiff was transferred to Forsyth Medical Center, where he remained from August 9, 2007 through August 17, 2007. Records from Forsyth Medical Center reflect that plaintiff had been working outside when he experienced a seizure, for which he was treated. Plaintiff was also treated for respiratory failure.
12. According to plaintiff, after this incident the first thing he recalls is awakening in the hospital secured to the bed. At that time, plaintiff was experiencing pain throughout his body. During his hospitalization, plaintiff testified that he experienced headaches, difficulty walking and difficulty coordinating the use of his arms.
13. When he was released from the hospital, plaintiff continued to have seizures, and he also complained of terrible headaches going down the middle of his head. During this time period, plaintiff's seizures were occurring every day, sometimes two to three (2 to 3) times a day. Plaintiff was out of work during this time period, and was under the care of several neurologists. *Page 6 
14. At some point, plaintiff's treating physicians released him to go back to work. Plaintiff received restrictions limiting him from working in environments of extreme heat or extreme cold. Plaintiff tried to go back to work but he had difficulty. Plaintiff did not have enough energy to continue working, and after two to three (2 to 3) days, he did not go back to work. Plaintiff notified his supervisor that he could not work.
15. Plaintiff continued to be under the care of neurologists who prescribed medications for his headaches and his seizures. In the fall of 2007, plaintiff was having seizures as frequently as two to three (2 to 3) times per week. Some seizures were worse than others and some would last longer. There were times when he had to go to the hospital emergency department due to seizures. As of the date of hearing before the Deputy Commissioner, plaintiff was having two (2) or more seizures per week; however, his headaches are not as bad as they used to be.
16. Dr. Brandon Chandos provided expert testimony in this matter based on his treatment of plaintiff. Dr. Chandos is board-certified in neurology and has done fellowship training in neurophysiology, which he described as a combination of focus on epilepsy and diseases of the nerves and muscles. Dr. Chandos was of the opinion that a contemporaneous evaluation of plaintiff at or near the time of the event at issue would lead to a more accurate diagnosis. Consequently, such an evaluation would also lead to a more accurate causation opinion.
17. With respect to whether plaintiff had a heat stroke or a heat-related event on August 9, 2007, Dr. Chandos was of the opinion that plaintiff's symptoms were consistent with heat exhaustion or heat stroke, as he had physical evidence of dehydration, physical evidence of the inability to maintain a normal body temperature and his body temperature was greater than *Page 7 
98.6 degrees. He reviewed the records of Northern Surry County Hospital where plaintiff was initially treated, and was of the opinion that plaintiff's temperature of 100.5 degrees was abnormally high. Dr. Chandos further noted that plaintiff was give intravenous fluids, which to him was another indication that he was dehydrated.
18. Dr. Chandos opined that working outdoors for over thirty (30) minutes doing strenuous activity with an outside temperature of greater than ninety-eight (98) degrees and a humidity level of sixty (60) percent or more would place someone at a higher risk of having a heat-related event versus someone not in such an environment. Dr. Chandos also opined that plaintiff's work conditions on August 9, 2007 exposed him to a greater risk of experiencing a heat-related event, and that the heat-related event plaintiff experienced on August 9, 2007 was a significant contributing factor in the development and continuation of plaintiff's headaches and seizures.
19. According to Dr. Chandos, if someone were placed in an environment with elevated temperatures and high humidity such that their core body temperature rose, that could be a trigger for seizure activity, and prolonged seizure activity is an insult to the brain which could cause additional seizure activity. Based on Dr. Chandos' training and clinical observations of plaintiff, he diagnosed him with seizure activity which he referred to as "cortical irritability" or "abnormal electrical or metabolic activity that's causing symptoms." Dr. Chandos identified no other possible cause of the seizure activity, including anything plaintiff "was doing on purpose or even unconsciously."
19. Dr. Kevin Brown, who is also a neurologist, also testified in this matter. Initially, Dr. Brown was of the opinion that plaintiff sustained a heat stroke that led to a seizure. However, at the time of his deposition, Dr. Brown opined that the condition for which he treated *Page 8 
plaintiff is non-epileptic, paroxysmal seizures that are not causally related to his heat exposure on August 9, 2007. Dr. Brown felt that there was most likely a psychiatric reason for plaintiff's seizures. He would not give an opinion on whether the conditions under which plaintiff worked on August 9, 2007 exposed him to a greater risk of overheating or developing heat exhaustion, or whether these conditions reasonably contributed to the development of plaintiff's seizure activity.
20. Dr. Gwendolyn Wigand Bolling, who is board-certified in internal medicine, is medical director of the Surry County Health and Nutrition Center and performed a records review in this matter at the request of defendant-employer. Based upon that records review, Dr. Bolling opined that plaintiff's fall on August 9, 2007 and subsequent condition had nothing to do with heat exposure. Dr. Bolling occasionally provides general care to seizure patients who are being treated by neurologists, but does not keep up with current research in the areas of epilepsy and seizure disorders.
21. Although in his capacity as a loader operator plaintiff had removed metal objects that had become stuck in the tracks of his track loader on occasions prior to August 9, 2007, there is no evidence of record upon which to find that he had ever performed that task for a period of approximately thirty (30) minutes on a day with temperatures in excess of ninety-eight (98) degrees and a humidity factor in excess of sixty (60) percent. Accordingly, the circumstances of plaintiff's injury on August 9, 2007 constituted an interruption of plaintiff's regular work routine and the introduction thereby of unusual conditions likely to result in unexpected consequences. *Page 9 
22. The Full Commission finds, based upon the greater weight of the evidence, that on August 9, 2007, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer.
23. Upon being released from the hospital, plaintiff continued to experience seizures and severe headaches. At times, the seizures occurred daily. As of the date of the hearing before the Deputy Commissioner, plaintiff continued to experience seizures, through their frequency had decreased to approximately two (2) per week. The Full Commission finds, based upon the greater weight of the evidence, that plaintiff is incapable of working due to his ongoing seizures and headaches.
24. The Full Commission gives greater weight to the testimony and opinions of Dr. Chandos as opposed to those of Dr. Brown, who did not have the benefit of an examination of plaintiff contemporaneous to the event, and also those of Dr. Bolling, who did not physically examine plaintiff. Dr. Chandos is board-certified in neurology and has additional fellowship training in neurophysiology. Dr. Chandos was the chief of neurology at Saint Agnes Medical Center, a teaching hospital in Baltimore, Maryland, for four (4) years, and since coming to North Carolina approximately three (3) years prior to his deposition, his practice at Forsyth Medical Center has included treating patients with strokes, epilepsy, infections of the nervous system, headaches, Parkinson's disease and a variety of general neurological conditions. Dr. Chando also has a sub-specialty in sleep medicine.
19. Based upon the totality of the credible vocational and medical evidence of record, and as a result of his August 9, 2007 injury by accident, plaintiff has been unable to earn any wages in his former position with defendant-employer or in any other employment for the period *Page 10 
of August 10, 2007 through the present and continuing. Plaintiff's attempt to return to work was unsuccessful and any wages earned were not indicative of wage earning capacity.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On August 9, 2007, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
2. "[W]here the employment subjects a workman to a special or particular hazard from the elements, such as excessive heat or cold, likely to produce sunstroke or freezing, death or disability resulting from such cause usually comes within the purview of the compensation acts." Fields v. Tompkins-Johnston Plumbing Co.,224 N.C. 841, 842-843, 32 S.E.2d 623, 624 (1945). Plaintiff has established that his employment exposed him to hazardous conditions greater than those to which he would otherwise be exposed outside his employment and greater than conditions encountered by the general public. Dillingham v. Yeargin Constr. Co.,320 N.C. 499, 358 S.E.2d 380 (1987).
3. As a result of his seizures and headaches, which are causally related to his injury, plaintiff has been physically incapable of work in any employment since the date of his injury and he has been written out of work by Dr. Chandos. Plaintiff has proven continuing total disability. Plaintiff is entitled to ongoing temporary total disability compensation at the rate of $375.20 per week from August 10, 2007 through the present and continuing until he returns to work, or until further Order of the Industrial Commission. N.C. Gen. Stat. § 97-29, Russell v. Lowes ProductDistribution, 108 N.C. App. 762, 425 S.E.2d 454. *Page 11 
4. As a result of his August 9, 2007 injury, plaintiff is entitled to have defendant pay for all related medical expenses incurred or to be incurred, when the medical bills have been approved according to established North Carolina Industrial Commission procedures. N.C. Gen. Stat. § 97-25.
 ***********
Based on the foregoing stipulations, findings of fact and conclusions of law, the Full Commission makes the following:
 AWARD
1. Defendant shall pay to plaintiff ongoing temporary total disability compensation at the rate of $375.20 per week from August 10, 2007 through the present and continuing until he returns to work, or further Order of the North Carolina Industrial Commission. All accrued compensation shall be paid to plaintiff in a lump sum subject to the attorney's fee approved herein.
2. Defendant shall pay for all related medical expenses incurred or to be incurred by plaintiff as a result of his August 9, 2007 injury by accident when the medical bills have been approved according to established North Carolina Industrial Commission procedures.
3. A reasonable attorney's fee of twenty-five (25) percent of the compensation awarded herein is approved for counsel for plaintiff. From the compensation having accrued, this fee shall be deducted from the amounts due plaintiff and paid directly to counsel for plaintiff, with counsel for plaintiff receiving every fourth (4th) check thereafter.
4. Defendants shall receive a credit offset for the wages plaintiff earned on the few days of his unsuccessful attempt to return to work.
5. Defendant shall pay the costs. *Page 12 
This the ___ day of February 2010.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER
 S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER *Page 1