Upon review of all of the competent evidence of record with reference to the errors assigned, and finding good grounds to reconsider the evidence and to receive further evidence, the Full Commission AFFIRMS IN PART and MODIFIES IN PART the Opinion and Award of the Deputy Commissioner and further AMENDS its own Opinion and Award filed September 9, 1997 as follows:
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing before the Deputy Commissioner as
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. The employer-employee relationship existed between the defendant-employer and the plaintiff-employee at all relevant times herein.
3. The carrier on the risk at all relevant times herein was Cigna Property Casualty.
4. The employee's average weekly wage at the time of the alleged injuries or contraction of an occupational disease was $466.80, which yields a compensation rate of $311.22.
5. Plaintiff was out of work from January 13, 1994 until April 18, 1994.
6. The issues to be determined are, whether plaintiff has sustained either a compensable injury by accident or an occupational disease to her shoulders; and whether a prior Compromise Settlement Agreement obviated plaintiff's claim.
7. Following the Order of the Full Commission re-opening the record for additional medical evidence pursuant to plaintiff's Motion for Reconsideration, the parties submitted in writing the following additional stipulations:
 (a) Plaintiff 's left rotator cuff shoulder condition that required surgery has been accepted by Cigna as a compensable condition.
 (b) Following her left shoulder surgery, plaintiff was out of work for the time period of June 6, 1996 to September 9, 1996 and is entitled to temporary total disability benefits for this time period less any short term disability benefits paid to employee by the employer for this period.
 (c) Plaintiff received a 5% permanent partial disability rating of the left shoulder from Dr. Cregan on January 21, 1998. The parties agree that plaintiff is entitled to benefits for the permanent partial disability rating.
 ***********
The Full Commission modifies in part and adopts in part the findings of fact by the Deputy Commissioner and finds as follows:
 FINDINGS OF FACT
1. Plaintiff's date of birth is January 16, 1951. At the time of her alleged injury or contraction of an occupational disease, plaintiff had worked for defendant-employer for more than twenty years and had worked as a metal treater for approximately two years. Plaintiff's various jobs with defendant-employer involved use of her hands and upper extremities.
2. Plaintiff's job as a metal treater involved pulling baskets of parts weighing twenty to seventy pounds for distances of ten to twenty feet across the floor using a metal hook; lifting, counting, reaching and stamping parts and sometimes overhead lifting and reaching.
3. On August 1, 1993 plaintiff pulled a heavy basket of metal parts weighing approximately sixty to seventy pounds across the floor using a metal hook for pulling. Plaintiff testified at the hearing that due to the weight of the basket she had to "jerk" the hook "real hard" to get the basket to move. After moving a short distance, she had to stop, rest and repeat the same motion again. After pulling the basket, plaintiff reached overhead to stamp a part and felt a severe pain in her right shoulder. At the time of the onset of the right shoulder pain, plaintiff was performing her normal work duties in her usual manner. Plaintiff had returned to work approximately two weeks prior after a long absence due to work-related carpal tunnel surgery, which was accepted as a compensable occupational disease and the parties resolved that claim by Compromise Settlement Agreement.
4. Plaintiff reported her pain to her supervisor immediately and went to the First Aid station where she received assistance from a co-worker. Plaintiff continued to work without seeking medical treatment for three weeks. During this three-week period, plaintiff primarily used her left upper extremities due to pain on her right side.
5. Plaintiff sought medical treatment with Dr. Gregg Cregan, an orthopaedic surgeon, on August 23, 1993. Dr. Cregan had previously treated plaintiff extensively for bilateral carpal tunnel syndrome (including surgery) and for shoulder pain. Plaintiff complained of pain associated with grinding and crepitance (a crunchy-like feeling) in the right shoulder.
6. Dr. Cregan treated plaintiff conservatively with a cortisone shot and physical therapy for approximately two months. On November 5, 1993 he obtained bilateral MRI scans of plaintiff's shoulders which showed a right shoulder spur at the acromion joint (AC), and increased signal consistent with an incomplete tear of the rotator cuff. On the left side plaintiff had a normal AC joint and an increase in signal consistent with tendinitis. Dr. Cregan diagnosed plaintiff's right shoulder problem as an incomplete rotator cuff tear secondary to impingement syndrome. Dr. Cregan performed surgery on plaintiff's right shoulder on January 14, 1994.
7. On December 5, 1994 Dr. Cregan rated plaintiff with a ten percent permanent partial impairment to the right arm resulting from the rotator cuff tear and other interior problems of the shoulder. No surgery was needed at that time on plaintiff's left shoulder and Dr. Cregan did not believe plaintiff had any permanent partial impairment of the left shoulder.
8. Dr. Cregan opined that the problems for which he treated plaintiff on August 23, 1993 could have been caused by a single incident of trauma such as pulling and jerking a heavy basket across the floor, or a single incident of reaching overhead; or could have been caused by repetitive lifting, pulling and reaching (sometimes overhead) of heavy objects in the type of work plaintiff did with defendant-employer.
9. Based upon the greater weight of the evidence including the testimony of Dr. Cregan, plaintiff's only treating physician and the only medical expert rendering an opinion in this case, plaintiff's employment with defendant-employer which involved the repetitive pulling and lifting of heavy objects and repetitive reaching, sometimes overhead, for many years caused plaintiff's crepitance and grinding in the right shoulder, the impingement and spur and the partial rotator cuff tear in plaintiff's right shoulder and tendinitis of plaintiff's left shoulder. Plaintiff's surgery was reasonably required to provide relief from and to lessen the disability from the pain and interior problems with plaintiff's right shoulder.
10. Plaintiff's employment placed her at an increased risk of developing internal problems in her shoulders over that of the general public. Dr. Cregan opined that wear and tear from general daily activities would be more common in older persons and that plaintiff was a little young to be having the kind of wear and tear from wearing out that he saw in plaintiff's shoulders. Due to plaintiff's young age (41 years old at the time), Dr. Cregan was of the opinion that plaintiff's shoulder problem came from more use than the normal individual (the general public) would have.
11. Plaintiff has proven by the greater weight of the evidence that her employment was a significant contributing factor in the development of her bilateral shoulder problems. Plaintiff has contracted occupational diseases which are due to causes and conditions characteristic of and peculiar to her employment with defendants and her employment placed her at an increased risk of developing such diseases.
12. Plaintiff was out of work due to her right shoulder surgery from January 13, 1994 through April 18, 1994. On January 13, 1994 plaintiff became disabled due to the contraction of an occupational disease.
13. Plaintiff received $170.00 per week through a disability plan wholly funded by defendant-employer. Defendant is entitled to a credit for said payments to plaintiff.
14. Plaintiff's bulging cervical disk is unrelated to her occupational disease.
15. Plaintiff's previous Compromise Settlement Agreement did not cover the injuries for which she is complaining in this case. Plaintiff's prior claim was for carpal tunnel syndrome.
16. Based upon additional evidence received after reopening the record, plaintiff's left shoulder condition worsened to the point where surgery was required in June, 1996. Plaintiff 's left rotator cuff shoulder condition that required surgery has been accepted by defendants as a compensable condition.
17. Following her left shoulder surgery, plaintiff was out of work for the time period of June 6, 1996 to September 9, 1996 and is entitled to temporary total disability benefits for this time period less any short term disability benefits paid to employee by the employer for this period.
18. Plaintiff received a 5% permanent partial disability rating of the left shoulder from Dr. Cregan on January 21, 1998, for which the plaintiff is entitled to permanent partial disability benefits.
 ***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff did not sustain an injury by accident to her right shoulder on August 1, 1993. For an injury to be compensable, it must be shown to have resulted from an accident arising out of and in the course of employment. N.C. Gen. Stat. § 97-2(6); Perry v. American Bakeries, 262 N.C. 272, S.E.2d 643 (1964). An accident is considered as a separate event preceding and causing the injury; the mere fact of the injury does not of itself establish the fact of accident. Bigelow v. Tire Sales Co.,12 N.C. App. 220, 182 S.E.2d 856 (1971). If a claimant's injury is caused by an event that involved his normal work routine in normal working conditions, it would not be considered to have been caused by an accident. This is true even when the exertion is the obvious cause of the injury. Dillingham v. Yergan ConstructionCo., 82 N.C. App. 684, 348 S.E.2d 143 (1986). N.C. Gen. Stat. § 97-2(6).
2. As a result of her employment with defendants, plaintiff has contracted impingement syndrome causing an incomplete rotator cuff tear and other internal problems of the right shoulder and problems with the rotator cuff of her left shoulder. Plaintiff's shoulder injuries are due to causes and conditions characteristic of and peculiar to plaintiff's job duties with defendants and not ordinary diseases of life to which the general public is equally exposed. Plaintiff has contracted a compensable occupational disease within the meaning of N.C. Gen. Stat. § 97-53(13).
3. Plaintiff is entitled to temporary total disability compensation for the period from January 14, 1994 through April 18, 1994 and for the period from June 6, 1996 to September 9, 1996. N.C. Gen. Stat. § 97-29.
4. Plaintiff is entitled to permanent partial disability compensation at the rate of $311.22 for 24 weeks for the 10% permanent partial impairment to her right upper extremity and for 12 weeks for the 5% permanent partial impairment to her left shoulder. N.C. Gen. Stat. § 97-31.
5. Plaintiff is entitled to medical treatment which is reasonably necessary to provide relief, effect a cure or lessen the period of her disability related to her occupational disease. N.C. Gen. Stat. § 97-25.
6. Defendants are entitled to a credit for the sickness and disability benefits that plaintiff has previously received from the defendants' sickness and disability plans.
7. Plaintiff is not barred from recovering for her shoulder injuries by the terms of her agreement with defendants dated on or about November 18, 1992, which resolved her claim for the condition of carpal tunnel syndrome to her right hand and wrist.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following
 AWARD
1. Subject to an attorney's fee hereinafter awarded, defendants shall pay to plaintiff temporary total disability benefits at the rate of $311.22 per week from January 14, 1994 through April 18, 1994, and from June 6, 1996 to September 9, 1996, less a credit to which defendants are entitled by reason of benefits paid under the sickness and disability plan. All accrued compensation shall be paid in one lump sum.
2. Subject to an attorney's fee hereinafter awarded, defendants shall pay to plaintiff permanent partial disability compensation at the rate of $311.22 per week for 24 weeks for the 10% permanent partial disability to her right upper extremity and for 12 weeks for the 5% permanent partial impairment to her left upper extremity.
3. Defendants shall pay all medical expenses incurred or to be incurred by plaintiff as a result of her compensable injury when bills for same have been submitted to and approved by the Industrial Commission, for so long as such evaluations, treatments and examinations may reasonably be required to effect a cure, give relief and/or lessen plaintiff's period of disability.
4. An attorney's fee of 25% of the compensation due plaintiff herein is hereby awarded to plaintiff's counsel. Said fee shall be deducted and paid directly to plaintiff's counsel.
5. Defendants shall pay the costs due this Commission.
 S/ _______________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/ _____________________ THOMAS J. BOLCH COMMISSIONER
S/ _____________________ LAURA K. MAVRETIC COMMISSIONER