BILLY TUCKER, Father, ANTONIO D'JUAN TUCKER, Minor, by and through his Guardian Ad Litem, RHONDA PARKER, DONALD RAY TUCKER, Deceased, Employee, Plaintiffs v. CITY OF CLINTON, Self-Insured Employer administered by GAB Business Services, Inc., and CARTERET COUNTY, Self-Insured Employer administered by Sedgwick James of the Carolinas, Defendants

No. COA94-798

(Filed 21 November 1995)

### Workers' Compensation § 274 (NCI4th)— acknowledgment of paternity by deceased father—commission's order based on clerk's order—clerk's order not reliable

The evidence was insufficient to support a determination that the deceased putative father acknowledged paternity of plaintiff's child in a legally cognizable fashion, thus entitling the child to survivor's benefits under the Workers' Compensation Act, where the Industrial Commission's order was based on the Sampson County clerk's order finding paternity, but the clerk's order was so lacking in the traditional indicia of trustworthiness as to be incompetent as evidence sufficient to establish acknowledgment under the standards enumerated in *Carpenter v. Hawley*, 53 N.C. App. 715, since the hearing before the clerk did not take place in an adversarial setting, the legitimation petition was filed by the putative grandfather who lacked standing to attempt the legitimation, the N.C. legitimation and paternity statutes are inoperative after the death of the father, and an action to establish acknowledgment of a child under *Carpenter*, for workers' compensation purposes, is limited to the Industrial Commission.

**Am Jur 2d, Workers' Compensation §§ 209, 210.**

**What amounts to recognition within statutes affecting the status or rights of illegitimates. 33 ALR2d 705.**

**Supreme Court's view as to the status and the rights of illegitimate children. 41 L. Ed. 2d 1228.**

Appeal by defendant from the opinion and award of the North Carolina Industrial Commission filed 11 April 1994. Heard in the Court of Appeals 25 September 1995.

**TUCKER v. CITY OF CLINTON**

[120 N.C. App. 776 (1995)]

*Benjamin R. Warrick for the plaintiff appellee.*

*Brooks, Stevens & Pope, by Daniel C. Pope, Jr., and Michael C. Sigmon, for defendant appellant.*

*Teague, Campbell, Dennis & Gorham, by George W. Dennis, III, and Bryan T. Simpson, for Carteret County, defendant appellee.*

SMITH, Judge.

Plaintiff Rhonda A. Parker alleges that her child Antonio D'Juan Parker was fathered by the late Donald Tucker. Donald Tucker was a police officer killed in the line of duty. Based on her claim of paternity, Rhonda A. Parker seeks workers' compensation benefits for her child, claiming the child as a dependent survivor of the deceased Mr. Tucker. (Because Ms. Parker is the primary actor here, she is referred to as plaintiff.) The contested issue is whether Mr. Tucker acknowledged paternity of the child in a legally cognizable fashion, thus entitling the child to survivor's benefits under the Workers' Compensation Act. We find the evidence *sub judice* insufficient to support a paternity determination; thus, we reverse and remand for rehearing.

Donald Tucker was a police officer employed by the City of Clinton. In August 1991, Donald Tucker was "loaned" to Carteret County to assist in an undercover narcotics investigation. While working in this undercover capacity for Carteret County, he was fatally wounded.

Prior to his death, Mr. Tucker had an ongoing, intimate relationship with plaintiff. In December 1990, Mr. Tucker gave plaintiff an engagement ring. The next month, plaintiff informed Mr. Tucker that she was pregnant. Mr. Tucker did not want plaintiff to have the child and requested that plaintiff have an abortion. Plaintiff refused, and this turn of events led to the termination of the couple's romantic association.

After the death of Donald Tucker, the deceased's father Billy Tucker (also personal administrator of the Donald Tucker estate), initiated a special proceeding before the Clerk of Court of Sampson County to establish the legitimacy of the child. Billy Tucker's acquiescence to the proceeding was premised upon a *quid pro quo*: He would support plaintiff's claim for workers' compensation survivor benefits for the child, if plaintiff would not make a claim against Donald Tucker's estate on the child's behalf.

Based on this agreement, Billy Tucker and plaintiff requested scientific testing to establish the paternity of Antonio D'Juan Tucker. A tissue sample was taken from the cadaver of Donald Tucker. Blood and tissue samples were drawn from plaintiff and her child. The samples were then taken to a genetics laboratory, where tests were run comparing the biological makeup of the three involved parties. It is unclear from the record exactly what tests were administered by the laboratory. At various times in the record and briefs, the tests are called blood tests, or "HLA"; at others, the tests are described as genetic, or "DNA."

With the biological tests in hand, Billy Tucker petitioned the Sampson County Clerk of Court for an order establishing Antonio D'Juan Tucker as Donald Tucker's son. During the special proceeding, the clerk took evidence on the nature of Donald Tucker's and plaintiff's relationship. The clerk also heard testimony concerning the biological tests conducted, comparing the tissue and blood of the decedent with Antonio D'Juan Tucker and plaintiff. Ultimately, the clerk concluded Antonio D'Juan Tucker to be the biological son of Donald Tucker, and issued an Order Legitimating Child.

Three and a half months later, plaintiff filed a Notice of Accident and Claim with the Industrial Commission (Commission), to obtain benefits based upon the fatal injury to Donald Tucker. The Commission heard testimony tending to show the relationship between plaintiff and Donald Tucker. The Commission determined that Donald Tucker had conditionally acknowledged the child prior to his death, qualified upon receipt of the blood test results.

The blood test results were offered into evidence by the plaintiff, by way of the clerk's Order Legitimating Child (clerk's Order). Admission of the clerk's Order was objected to by defendant, on grounds of hearsay and lack of trustworthiness. Nevertheless, the Commission admitted the Order into evidence. The Commission concluded that Donald Tucker's condition for acknowledgment had been fulfilled by the blood tests referred to in the Sampson County Clerk's Order.

The clerk's Order included findings that the biological tests had occurred, and paternity was established to a 99.83% certainty. Based on the information before it, the Commission found that Donald Tucker had acknowledged Antonio D'Juan Tucker through his actions, and concluded Donald Tucker was the biological father. In its Award, the Commission ordered defendant to pay plaintiff benefits,

## TUCKER v. CITY OF CLINTON

[120 N.C. App. 776 (1995)]

as support for the child Antonio D'Juan Tucker, until the child reaches age eighteen.

In the instant case, defendant argues the Commission committed reversible error by concluding that Antonio D'Juan Tucker was the acknowledged son of Donald Tucker. Particularly, defendant assigns as error the Commission's admission of the Sampson County Clerk's Order into evidence, the blood sample or tissue sample findings arising therefrom, and the Commission's ultimate conclusion that Donald Tucker had acknowledged paternity of Antonio D'Juan Tucker. We agree.

The crucial question in the instant case is whether Donald Tucker left surviving him a "child" as defined in the Workers' Compensation Act. The Act defines a child as including: "a posthumous child . . . or acknowledged illegitimate child dependent upon the deceased . . . ." N.C. Gen. Stat. § 97-2(12) (1991 and Cum. Supp. 1994). A "child" is conclusively presumed to be wholly dependent for support upon a deceased employee. N.C. Gen. Stat. § 97-39 (1991).

Thus, to qualify for survivor's benefits under the Act, an illegitimate child must be acknowledged in sufficient fashion by the father. There are several methods by which a child may be acknowledged or legitimated under North Carolina law. One such way is through statutory procedure, as enumerated by N.C. Gen. Stat. §§ 49-10 through 49-14 (1984 and Cum. Supp. 1994). See *Helms v. Young-Woodard,* 104 N.C. App. 746, 749-50, 411 S.E.2d 184, 185 (1991), *disc. review denied,* 331 N.C. 117, 414 S.E.2d 756 (1992). Another way is through actions or conduct of a party, which rise to the level of parental cognizance. This method is limited to matters involving workers' compensation. *Carpenter v. Hawley,* 53 N.C. App. 715, 718, 281 S.E.2d 783, 786-87 (1981).

Plaintiff has attempted to prove acknowledgment through the method espoused by this Court in *Carpenter.* Whether the evidence before the Commission was sufficient to meet the *Carpenter* standard is a mixed question of law and fact. In such a situation, the Commission's designations of "findings" and "conclusions" are not binding on this Court, and our review extends to whether the facts found by the Commission are sufficient to support its conclusion that the *Carpenter* acknowledgment standard has been met. *See Brown v. Charlotte-Mecklenburg Board of Education,* 269 N.C. 667, 670, 153 S.E.2d 335, 338 (1967).

The *Carpenter* standard is intentionally malleable, so as to encompass realities inherent in the acknowledgment of an illegitimate child. *Carpenter*, 53 N.C. App. at 720-21, 281 S.E.2d at 785, 786-87. However malleable the standard may be, the Commission must apply only competent evidence in making an acknowledgment determination. We recognize the Commission is not required to strictly apply the rules of evidence applicable to a court of law. *Haponski v. Constructor's Inc.*, 87 N.C. App. 95, 97, 360 S.E.2d 109, 110 (1987). But, in determining on review whether any "competent" evidence supports the Commission's findings, this Court must apply "those courtroom evidentiary principles which embody the legal concept of 'competence.' " *Id.*

The Commission's conclusions vis-a-vis Donald Tucker's acknowledgment of Antonio D'Juan Tucker are not based on competent evidence. They are based largely on the factual assertions found in the Sampson County Clerk's Order Legitimating Child. So, the integrity of the Commission's conclusions are necessarily a function of the competence of the fact-finding employed by the Sampson County Clerk. The clerk's Order, replete with double hearsay, was apparently admitted by the Commission under the public records exception to the rules of evidence. N.C. Gen. Stat. § 8C-1, Rule 803(8) (1992). However, the overriding principle governing admission of records, such as the clerk's Order, is whether "the sources of information or other circumstances indicate lack of trustworthiness." *Id.*; 2 Henry Brandis, Jr., *Brandis on North Carolina Evidence* § 229 (4th ed. 1993); *Bolick v. Sunbird Airlines, Inc.*, 96 N.C. App. 443, 446, 386 S.E.2d 76, 77 (1989), *aff'd*, 327 N.C. 464, 396 S.E.2d 323 (1990).

We find the clerk's Order to be so lacking in the traditional indicia of trustworthiness as to be incompetent as evidence sufficient to establish acknowledgment under the standards enumerated in *Carpenter*. Because the clerk's Order is the primary domino in the Commission's factual findings, the Commission's conclusions of law are unsound and cannot stand.

The Sampson County Clerk's Order gives us substantial pause for many reasons. Billy Tucker admits the hearing before the clerk did not take place in an adversarial setting. Prior to the hearing, both Billy Tucker and plaintiff struck what amounts to a "Mary Carter Agreement." *See* Black's Law Dictionary 974 (6th ed. 1990). Billy Tucker agreed to support plaintiff's claim of paternity, if plaintiff would refrain from asserting a claim against the decedent Donald

**TUCKER v. CITY OF CLINTON**

[120 N.C. App. 776 (1995)]

Tucker's estate. Billy Tucker gained from this agreement, as he was administrator of Donald Tucker's estate, and had an interest in protecting those assets. By reaching an agreement with plaintiff, Billy Tucker ensured that responsibility for supporting the child would be shifted away from Donald Tucker's estate, into the hands of a third party, *viz.*, the City of Clinton. Plaintiff gained from the agreement, as the Order Legitimating Child could be used to help establish the acknowledgment necessary to procure workers' compensation benefits.

Put simply, both parties had the motive and opportunity to present the Sampson County Clerk with testimony and evidence tailored to their objectives. The level of scrutiny applied to the evidence before the clerk was undoubtedly affected by the nonadversarial nature of the proceeding. Neither party had a motive to contradict the other. Since no transcript or record from the hearing before the clerk exists in the record on this appeal, we cannot adjudge the quality or integrity of that proceeding.

Another factor casting doubt on the veracity of the facts contained in the clerk's Order is its propriety as a legitimation under law. The clerk's Order draws its authority from the legitimation statute, N.C. Gen. Stat. § 49-10 (1984). However, this statute unambiguously limits who may file a legitimation petition to the "putative father of any child born out of wedlock." *Id.* The petitioner of the Order at hand, Billy Tucker, was not the putative father, but the putative grandfather of Antonio D'Juan Tucker. Thus, the putative grandfather lacked standing to attempt the legitimation.

Secondly, both the North Carolina legitimation and paternity statutes are inoperative after the death of the father. The cause of action delineated in the legitimation statute (§ 49-10) is limited to the putative father. *Id.* Civil actions to establish paternity, per the paternity statute, are expressly barred after the death of the putative father. N.C. Gen. Stat. § 49-14 (1984). Our precedent supports this view, as we have held that "[a]ll of the legitimation routes authorized by the North Carolina statutes require the proceeding to be completed prior to the putative father's death." *Helms*, 104 N.C. App. at 750, 411 S.E.2d 184, 186 (1991).

Finally, an action to establish acknowledgment of a child under *Carpenter*, for workers' compensation purposes, is limited to the Industrial Commission. *Carpenter*, 53 N.C. App. at 718, 281 S.E.2d at 786-87. The Commission has exclusive jurisdiction over matters relative to rights and remedies afforded by the Workers' Compensation

Act. *Id.* at 718, 281 S.E.2d at 785. *Ergo,* the action of legitimation before the clerk could not have been under the aegis of *Carpenter.*

Unquestionably, the clerk had subject matter jurisdiction to entertain a legitimation petition under § 49-10. *In the Matter of Baby Boy Belton,* 11 N.C. App. 560, 561, 181 S.E.2d 760, 761 (1971), *cert. denied,* 279 N.C. 394, 183 S.E.2d 244 (1971); *and see generally Stump v. Sparkman,* 435 U.S. 349, 55 L.Ed.2d 331, *reh'g denied,* 436 U.S. 951, 56 L.Ed.2d 795 (1978). Clearly though, the clerk should have denied Billy Tucker's petition on the merits for failure to state a claim upon which relief may be granted, or dismissed for lack of standing. *Id.* We note substantial legal irregularities in the hearing, because such irregularities cast a pall over the veracity of the result.

Before admitting the clerk's Order under the hearsay exception for public records, the Commission should have made such reasonable foundational inquiries necessary to ensure the Order contained a reasonable modicum of trustworthiness. 2 Henry Brandis, Jr., *Brandis on North Carolina Evidence* § 229 (4th ed. 1993); *Bolick,* 96 N.C. App. at 446, 386 S.E.2d at 77. According to the record on appeal, the Commission conducted no such analysis. Therefore, it was an abuse of discretion to admit the Order.

It is impossible to glean whether, and to what extent, the Commission's conclusions were drawn from this improper evidence. The Commission's second conclusion of law, which addresses the acknowledgment issue, is derived almost verbatim from the clerk's Order.

Equally problematic is the Commission's legal conclusion that acknowledgment can become operative subsequent to the death of the putative father, if that putative father made acknowledgment conditional on some future event (here, the blood test results). *Carpenter* requires the existence of some "satisfactory evidence that the relation was recognized and admitted." *Carpenter,* 53 N.C. App. at 720, 281 S.E.2d at 786. Thus, *Carpenter* requires conscious, volitional behavior by the putative father. It is manifest that a condition met after a person's death is not such an act. Further, allowing conditional acknowledgments, especially in a post-death situation, creates an all too inviting setting for fraud. We are unwilling to venture down such a road.

This is not to say that plaintiff will be unable to meet its burden of showing acknowledgment in the instant case. On the contrary, we

recognize that evidence can exist independent of the clerk's Order which might suffice to pass the *Carpenter* test. For instance, plaintiff's mother testified that Donald Tucker personally acknowledged the child in her presence, on at least one occasion. The Full Commission makes no mention of this testimony in its decision. Whether this omission is a judgment on the credibility of the testimony, or merely a recognition of the testimony as superfluous evidence of an already proven fact, is a question unanswerable from the record. Moreover, the task of sorting and weighing the evidence is an improper task for this Court. *Coble v. Coble*, 300 N.C. 708, 712-13, 268 S.E.2d 185, 189 (1980).

Therefore, we remand for a rehearing of the acknowledgment issue, absent the clerk's Order. Evidence of the facts within the clerk's Order may be tendered to the Commission, but those facts must be individually proven, and not "bootstrapped" from the Order itself.

This case is reversed and remanded to the Industrial Commission for rehearing consistent with this opinion.

Judges GREENE and LEWIS concur.