IN THE MATTER OF M.C.S. & K.R.S.
No. COA09-1031.
Court of Appeals of North Carolina.
Filed January 19, 2010.
This case not for publication
Office of the Wake County Attorney, by Roger A. Askew and Scott W. Warren, for petitioner-appellee Wake County Human Services.
Susan F. Vick, for guardian ad litem.
Lucas & Ellis, PLLC, by Anna S. Lucas, for respondent-appellant.
STROUD, Judge.
Respondent-appellant appeals from the trial court's order terminating his parental rights as father to the minor children M.C.S. ("Mark"), born in 2006, and K.R.S. ("Kate")[1], born in 2007.[2] After careful review, we uphold the termination of respondent-appellant's parental rights.
On 13 December 2007, Wake County Human Services ("WCHS") filed a juvenile petition alleging the children to be neglected. At the time the petition was filed, respondent-appellant was serving a prison sentence of eleven months for possession of stolen goods. Respondent-appellant was listed as the father on Mark's birth certificate, but not on the birth certificate for Kate, who was born while respondent-appellant was incarcerated. The juvenile petition filed by WCHS alleged that the children's mother failed to sufficiently address Mark's significant medical issues, which include heart problems and asthma; she failed to visit and interact with Kate at the hospital after Kate was born addicted to methadone; she allowed the family's WIC benefits to lapse; and she was suspected of relapsing into illegal drug use. WCHS was granted non-secure custody of the children by court order. At the seven-day hearing on continuing non-secure custody held on 18 December 2007, the trial court found that "paternity of the children has not been established" and ordered that the children remain in custody with WCHS.
A consent order on adjudication and disposition was entered after a hearing held on 5 February 2008. The children were adjudicated neglected, in that they did not receive proper care or supervision, they did not receive necessary medical or remedial care, and they lived in an environment injurious to their welfare. Respondent-appellant was ordered to: (1) establish paternity, "if not already completed," (2) complete a substance abuse assessment and follow all recommendations, (3) complete a psychological evaluation, (4) complete an approved parenting skills program, (5) maintain stable income and housing sufficient to meet the needs of himself and his children upon release from incarceration, (6) resolve any outstanding criminal charges and refrain from any further criminal activity, and (7) regularly attend visitation with his children once released from incarceration and after paternity has been established. The court order stated that respondent-appellant's release was scheduled for 9 April 2008 but he had a pending court date in June 2008 for another felony.
No changes were made to respondent-appellant's plan after a review hearing was held on 1 May 2008. A permanency planning review hearing was held on 3 September 2008. The trial court found that respondent-appellant had not established paternity of Kate. No mention was made of the paternity of Mark. At the time of that hearing, respondent-appellant was scheduled to enter a plea of guilty to multiple felonies, and the court calculated his new release date to be "sometime between May and December 2009." Although respondent-appellant stated he wanted to plead guilty "so he can get out of prison and be a father to his children[,]" the court found that respondent-appellant "accepted no personal responsibility for the criminal charges, instead placing all blame squarely on the mother's brother." The trial court adopted a permanent plan of adoption for both children and relieved WCHS of reunification efforts with both parents.
WCHS filed a motion for the termination of both parents' parental rights on 30 October 2008. As to respondent-appellant, WCHS alleged as grounds for termination: (1) neglect pursuant to N.C. Gen. Stat. § 7B-1111(a)(1); and (2) failure to establish paternity or to legitimate the children pursuant to N.C. Gen. Stat. § 7B-1111(a)(5). On 9 December 2008, respondent-appellant filed a response to WCHS's motion to terminate his parental rights. The children's mother filed her own response to the motion on 9 March 2009. Both parents asked the trial court to order WCHS to resume reunification efforts.
Another permanency planning review hearing was held on 4 March 2009. The court found that respondent-appellant was released from prison on 31 December 2008, that he was not aware of the results of a home study done on his mother (the children's paternal grandmother), that "paternity of the children has not been established[,]" and that he had not established stable housing or employment. The court further found that respondent-appellant had not participated in parenting education due to his incarceration, but he did complete a psychological evaluation the week before the hearing. Results from the evaluation were not available at the time of the hearing. The trial court denied the parents' request to change the permanent plan from adoption to reunification and reiterated that WCHS "continues to be relieved of reunification efforts with the parents." However, the trial court granted the parents supervised visitation.
The motion for termination of parental rights came on for hearing on 31 March, 1 April, and 15 April 2009. After hearing testimony and taking evidence, the trial court, by order dated May 2009, found by clear, cogent, and convincing evidence that grounds exist to terminate respondent-appellant's parental rights on the basis of neglect and failure to legitimate the children. The trial court determined that the best interests of the children would be served by terminating both parents' rights, and ordered that their parental rights be terminated. Respondent-appellant appeals from the termination order.
Respondent-appellant challenges each of the two grounds for termination on the basis that neither ground is supported by the evidence or by the findings of fact. A termination of parental rights hearing consists of a two-step process. In re Blackburn, 142 N.C. App. 607, 610, 543 S.E.2d 906, 908 (2001). In the adjudication phase, the trial court must determine if at least one statutory ground for termination has been proven by clear, cogent, and convincing evidence. N.C. Gen. Stat. § 7B-1111(b) (2009); In re Young, 346 N.C. 244, 247, 485 S.E.2d 612, 614 (1997). Once the trial court finds that one ground for termination exists, the court moves on to the disposition phase, when the court considers the best interests of the child. N.C. Gen. Stat. § 7B-1110 (2009); In re Howell, 161 N.C. App. 650, 656, 589 S.E.2d 157, 161 (2003). The decision of whether termination is in the best interests of the child is reviewed for an abuse of discretion. In re Nesbitt, 147 N.C. App. 349, 352, 555 S.E.2d 659, 662 (2001).
A trial court may terminate the parental rights of a father to a child born out of wedlock if the father fails to establish paternity or legitimate the child "prior to the filing of a petition or motion to terminate parental rights" in one of the ways set forth by N.C. Gen. Stat. § 7B-1111(a)(5) (2009). The father's parental rights may be terminated if he has not, prior to the filing of the motion or petition to terminate his rights:
a. Established paternity judicially or by affidavit which has been filed in a central registry maintained by the Department of Health and Human Services; provided, the court shall inquire of the Department of Health and Human Services as to whether such an affidavit has been so filed and shall incorporate into the case record the Department's certified reply; or
b. Legitimated the juvenile pursuant to provisions of G.S. 49-10 or filed a petition for this specific purpose; or
c. Legitimated the juvenile by marriage to the mother of the juvenile; or
d. Provided substantial financial support or consistent care with respect to the juvenile and mother.
Id. "When basing the termination of parental rights on this statutory provision the court must make specific findings of fact as to all four subsections and the petitioner bears the burden of proving the father has failed to take any of the four actions." In re I.S., 170 N.C. App. 78, 88, 611 S.E.2d 467, 473 (2005) (citation omitted).
Here, the trial court made the following findings of fact relevant to the determination of whether respondent-appellant established paternity or legitimated the children for purposes of section 7B-1111(a)(5):
7. That the mother of the children was unmarried at the time of the conception and birth of the children and has not subsequently married the reputed father of the children.
. . . .
37. That the father has not judicially established paternity of either child. His name is on the birth certificate of [Mark] presumably under the provisions of N.C.G.S. § 130A-101(f), but there is no evidence that any affidavit which may have been executed pursuant to the provisions of that statute have been filed with the Wake County Clerk pursuant to the provisions of N.C.G.S. § 110-132 in an attempt to judicially establish paternity pursuant to the child support statutes. The father has not established paternity by affidavit which has been filed in a central registry maintained by the North Carolina Department of Health and Human Resources.
38. That there is no evidence that either child has been legitimated by the father pursuant to N.C.G.S. § 49-10 or that any petition has been filed to do so.
39. That there is no evidence presented at this hearing or in the underlying file that the father provided substantial financial support or consistent care with respect to the child [Mark] and his mother prior to incarceration. He was incarcerated at the time of the birth of [Kate] and for much of the time prior to her birth and did not provide substantial financial support or consistent care with respect to this child or her mother.
Based on these facts, the trial court concluded that grounds exist to terminate respondent-appellant's parental rights on the basis that prior to the filing of the motion for termination of parental rights, respondent-appellant had not established paternity judicially or by affidavit, nor had he legitimated the children or provided substantial financial support or consistent care.
Respondent-appellant argues that WCHS failed to present evidence as to each of the grounds for termination under N.C. Gen. Stat. § 7B-1111(a)(5). In fact, respondent-appellant argues that paternity was not really at issue. He contends that "No one, including WCHS, has brought forth any question as to whether [he] is the father of the children." However, the trial court's orders from the filing of the juvenile petition until the motion for termination of parental rights reiterate the requirement that respondent-appellant establish paternity in each court order in which the issue was addressed. Respondent-appellant's additional contention that he believed he had established paternity is not persuasive. Respondent-appellant was repeatedly directed to address paternity of the children by orders of the court.
With regard to N.C. Gen. Stat. § 7B-1111(a)(5)(a), respondent-appellant concedes that WCHS submitted affidavits from the North Carolina Department of Health and Human Services stating that no affidavit of paternity has been received from any person, respondent-appellant included, acknowledging paternity or purporting to be the father of either one of the children. However, respondent-appellant contends that WCHS failed to demonstrate that prior to the filing of the motion for termination of parental rights that (1) he did not establish paternity judicially; (2) he had not legitimated the juveniles pursuant to provisions of N.C. Gen. Stat. § 49-10 or filed a petition for this specific purpose; (3) he had not legitimated the juveniles by marriage to the mother of the juveniles; and (4) he had failed to provide "substantial financial support or consistent care with respect to the juvenile[s] and mother." N.C. Gen. Stat. § 7B-1111(a)(5). We will address each of these contentions in order.

(1) Establishment of paternity judicially
Respondent-appellant contends that WCHS failed to show that he did not "establish paternity judicially" as to the juveniles. Respondent-appellant argues that since the trial court in several court orders prior to the filing of the motion to terminate parental rights referred to respondent-appellant as the "father" of the children, "[p]aternity has undoubtedly been judicially established in this case." This argument is undermined, however, by the fact that several of the trial court's prior orders included in the record refer to respondent-appellant as the "putative father" or refer to him as the "father" but also specifically state that paternity has not been established and order respondent-appellant to address paternity as a condition of reunification. Indeed, establishment of paternity of the children was one of the conditions of reunification imposed by the trial court upon respondent-appellant from the beginning of the proceedings as to neglect of the children. The orders in the neglect phase of this case therefore did not judicially establish paternity as required by N.C. Gen. Stat. § 7B-1111(a)(5)(a).
Respondent-appellant also stated in his responsive pleadings that he "never denied" that he was the father of the children and that he had admitted allegations of the motion for termination of parental rights that he was the father of the children. See Rich, Rich & Nance v. Carolina Constr. Corp., 153 N.C. App. 149, 153, 570 S.E.2d 212, 215 (2002) (A party's admission in a responsive pleading is a judicial admission and is thus "conclusive and binding upon the parties."); Rollins v. Miller Roofing Co., 55 N.C. App. 158, 162, 284 S.E.2d 697, 700 (1981) ("The effect of a judicial admission is to establish the fact for the purposes of the case and to eliminate it entirely from the issues to be tried." (quotation marks omitted)). However, respondent-appellant made no admission of paternity in his responsive pleadings that could be construed as judicially establishing paternity. In its Motion for Termination of Parental Rights, WCHS alleged that respondent-appellant was the father of Mark and Kate, but respondent-appellant admitted only that this allegation was true "upon information and belief." He followed this admission "upon information and belief" by stating that he had requested that paternity tests be performed to establish whether he was the father of the children. Respondent admitted only that there was a possibility that he may be the father of the children, as he wanted paternity testing to make this determination.
We also note that N.C. Gen. Stat. § 7B-1111(a)(5) requires that paternity be judicially established "prior to the filing of a petition or motion to terminate parental rights[.]" (emphasis added). By definition, a response to the motion to terminate parental rights cannot occur prior to the filing of the motion; whatever the response might establish was not established prior to the filing of the motion. The trial court properly found that respondent-appellant did not judicially establish paternity prior to the filing of the motion to terminate parental rights.
Respondent-appellant further contends that paternity was never at issue as to Mark, since respondent-appellant was listed as the father on Mark's birth certificate, and the trial court ordered in its 3 September 2008 review order that respondent-appellant needed to establish paternity for Kate, but did not mention paternity for Mark. However, the trial court's 3 April 2009 review order states that "paternity of the children has not been established." (emphasis added). Additionally, the trial court noted in the termination order that respondent-appellant's name appears on the birth certificate for Mark, "presumably under the provisions of N.C.G.S. § 130A-101(f)[.]" Pursuant to that section, "[i]f the mother was unmarried at all times from date of conception through date of birth, the name of the father shall not be entered on the certificate unless the child's mother and father complete an affidavit acknowledging paternity which contains" sworn statements by both parents that the father "is the natural father of the child[,]" along with other information. N.C. Gen. Stat. § 130A-101(f)(2009). The section also provides, "[i]n the event paternity is properly placed at issue, a certified copy of the affidavit shall be admissible in any action to establish paternity." Id. There is no indication in the record that respondent-appellant and the mother ever completed an affidavit as provided by N.C. Gen. Stat. § 130A-101(f); to the contrary, Richard Hayner, WCHS child welfare supervisor, testified that respondent-appellant had not taken any steps to establish paternity of the juveniles. We also note that despite the fact that respondent-appellant's name appeared on Mark's birth certificate, respondent-appellant did not admit that he was Mark's father in response to the petition's allegation, as discussed above; as to both children, he admitted only the possibility that he could be the father. The trial court therefore properly found that respondent-appellant had not established paternity of Mark prior to the filing of the petition to terminate his parental rights in accordance with N.C. Gen. Stat. § 130A-101(f).

(2) Failure to legitimate juvenile pursuant to N.C. Gen. Stat. § 49-10
N.C. Gen. Stat. § 49-10 sets forth "a statutory procedure" to acknowledge or legitimate a child. Tucker v. City of Clinton, 120 N.C. App. 776, 779, 463 S.E.2d 806, 809 (1995). In order to legitimate a child under N.C. Gen. Stat. § 49-10, "the putative father of any child born out of wedlock . . . may apply by a verified written petition, filed in a special proceeding in the superior court . . . praying that such child be declared legitimate." N.C. Gen. Stat. § 49-10 (2009) "If it appears to the court that the petitioner is the father of the child, the court may thereupon declare and pronounce the child legitimated; and the full names of the father, mother and the child shall be set out in the court order decreeing legitimation of the child." Id. There is no evidence in the record that respondent-appellant ever legitimated either child. In addition, Mr. Hayner testified that respondent-appellant had not taken any steps to establish paternity of the juveniles. Certainly, the procedure set forth by N.C. Gen. Stat. § 49-10 is one of the steps that a putative father may take to establish paternity of a juvenile, but the evidence indicated that respondent-appellant did not take any such steps. The trial court therefore properly found that "there is no evidence that either child has been legitimated by the father pursuant to N.C.G.S. § 49-10 or that any petition has been filed to do so."

(3) Failure to legitimate juveniles by marriage to mother
Although respondent-appellant does not specifically challenge finding of fact 7, he does contend in his brief that WCHS failed to present any evidence that he had not legitimated the children by marrying the mother. However, the uncontroverted evidence was that the mother was never married to respondent-appellant. Substance abuse counselor Mandy Finn-Lees testified that respondent-appellant and the children's mother had "been discussing getting married," but according to respondent-appellant, the mother had gone "crazy." Mr. Hayner testified that to his knowledge, the mother had never gotten married. Further, WCHS social worker Leeann Watson stated, "From what I understand from both [respondent-appellant and the mother,] they're planning on getting married[,]" but she did not know when they might do that. Thus, WCHS did present evidence that defendant had never married the children's mother. The evidence therefore supports the trial court's finding on this issue, and the finding supports the conclusion that the children have not been legitimated by marriage to the mother pursuant to N.C. Gen. Stat. § 7B-1111(a)(5)(c).

(4) Failure to provide substantial financial support or consistent care
Finally, respondent-appellant contends that WCHS failed to meet its burden of showing that respondent-appellant did not provide financial support or consistent care for the children pursuant to N.C. Gen. Stat. § 7B-1111(a)(5)(d). He argues that evidence of his incarceration is insufficient to show that he failed to provide any support, and he points to testimony indicating that he paid for housing for the mother prior to his incarceration and that the mother subsequently "lost" that housing. Respondent-appellant contends the trial court erred in concluding he did not provide substantial financial support or consistent care as a basis for termination where the evidence does not support the finding of fact. We do not agree.
Mr. Hayner testified that as of the date of the hearing, respondent-appellant had not established independent living arrangements, nor had he obtained stable employment. Respondent-appellant had no legal or financial responsibilities in the place where he resided, and "he was not contributing financially to the  to the household." Mr. Hayner testified in regard to the housing that respondent-appellant provided for the mother:
A. [The mother's] housing has been unstable. She  at the very beginning of the case, again had reported she was staying with [another] family but had her other location. We could never verify how that was being paid for and she just indicated that [respondent-appellant] had paid for months and that  because he had been gone for many, many months  that he had paid in advance and that the housing was paid up. So, she had that location but stayed with [another] family.
There came a time several months  approximately several months after we had removed the children that she lost that housing, and I don't have a good understanding why. But she 
Q. The housing that [respondent-appellant] was 
A.  the housing that  correct. That [respondent-appellant] had reportedly paid for. She stayed with [another family] at times. She also stayed with her father and stepmother, . . . for a period of time, and was asked to leave that  that residence. I'm not sure if there was other housing.
I  I believe there are but I'm just not certain, and currently her and [respondent-appellant] reportedly are again living with [another] family . . . .
Further, clinical associate Kristy Matala performed a psychological evaluation on respondent-appellant in February 2009. She testified that respondent-appellant acknowledged "that he would be unable to care for his children right now[,]" and that he did not have a job or a place to live where he could take care of the children.
We find this evidence is sufficient to show that respondent-appellant had not provided substantial financial support or consistent care of the children or the mother. The testimony shows that while the mother may have had a residence paid for by respondent-appellant at one time, she apparently lived with another family even while she had that residence. Moreover, WCHS was unable to verify how the mother's "other" location was being paid for, although the mother stated that respondent-appellant had paid for it. Once the mother lost that residence, she stayed with family and/or friends, and once respondent-appellant was released from confinement, he and the mother continued to live with friends. There is no indication that he provided financial support, let alone substantial financial support, for the mother or the children.
We conclude that the trial court's findings of fact regarding respondent-appellant's failure to establish paternity of the juveniles prior to the filing of the motion to terminate parental rights are supported by clear, cogent, and convincing evidence. We also conclude that the findings of fact address each of the four methods for establishing paternity in N.C. Gen. Stat. § 7B-1111(a)(5), and that they fully support the trial court's conclusion that grounds exist to terminate respondent-appellant's parental rights pursuant to N.C. Gen. Stat. § 7B-1111(a)(5).
Since we find the trial court properly terminated respondent-appellant's parental rights on the statutory ground of failure to establish paternity or legitimate the children, we need not address respondent-appellant's arguments regarding the second ground for termination. See In re B.S.D.S., 163 N.C. App. 540, 546, 594 S.E.2d 89, 93-94 (2004) ("Having concluded that at least one ground for termination of parental rights existed, we need not address the additional ground[s] . . . found by the trial court."). The trial court's order terminating respondent-appellant's parental rights as to the minor children is affirmed.
Affirmed.
Judges CALABRIA and STEPHENS concur.
Report per Rule 30(e).
NOTES
[1] We will refer to the minor children M.C.S. and K.R.S by pseudonyms, Mark and Kate, to protect the children's identities and for ease of reading.
[2] The children's mother did not appeal from the order, which also terminated her parental rights, and is therefore not a party to this appeal.